Mary B. HAXTON, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of Health, Education, and Welfare, Defendant.

Civ. No. 38259.

United States District Court
N. D. California, S. D.

April 21, 1960.

Philander Brooks Beadle, San Francisco, Cal., for plaintiff.

Lynn J. Gillard, U. S. Atty., San Francisco, Cal., John Kaplan, Asst. U. S. Atty., San Francisco, Cal., for defendant.

WOLLENBERG, District Judge.

By this action the plaintiff seeks to establish a period of disability under the Social Security Act, 42 U.S.C.A. § 416 (i). The instant action is brought under 42 U.S.C.A. § 405(g) and the court is requested to review the decision of the Referee and the Appeals Council, Social Security Administration, Department of Health, Education and Welfare. Plaintiff sought a review of the Referee's decision by the Office of Appeals Council, and was denied such review on March 20, 1959. The decision of the Appeals Council is a "final decision of the Secretary" entitling claimant to judicial review.

The complaint was timely filed on May 19, 1959. The Secretary of the Depart-

ment of Health, Education and Welfare, in accordance with 42 U.S.C.A. § 405(g) filed as a part of his answer a certified copy of the transcript of the record including the evidence upon which the finding and decision complained of are based.

 The standard upon which this court is to review the final decision of the Secretary is provided by 42 U.S.C.A. § 405(g):

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

"Substantial evidence" is more than a mere scintilla and it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Aaron v. Fleming, D.C.1958, 168 F.Supp. 291. The burden of proof, both before the Referee and in the instant proceeding, is upon the plaintiff. Thurston v. Hobby, D.C.Mo., 133 F.Supp. 205. The court is not, of course, bound by the Referee's conclusion of law. Miller v. Burger, 9 Cir., 161 F.2d 992.

The Referee was to determine, after a hearing in which the plaintiff participated and upon the submission of additional medical evidence, whether the plaintiff had established a period of disability as provided in 42 U.S.C.A. § 416 (i). "Disability" is the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

The period for which the claimant seeks a disability determination began November 19, 1946, when the claimant was injured in an automobile accident, and terminated October 19, 1955, when the claimant filed an application for a disability freeze. The Referee found that she was substantially totally disabled "so far as her ability to engage in any gainful activity was concerned" until approximately 1949. The Referee also concluded that "claimant has failed

to establish that from November 19, 1946 to October 19, 1955, she had been continuously precluded from engaging in any substantial gainful activity by reason of physical impairments of an extent and degree which would normally preclude such activity, and which impairments were not subject to substantial correction or repair by proper and appropriate medical attention and procedures." (Transcript 9.)

 Medical evidence in addition to that before the Referee was received by the Appeals Council upon the plaintiff's request for review by such Council. Since under 42 U.S.C.A. § 405(g) it is the "final decision of the Secretary" that this court is to review, and the refusal of the Appeals Council to review is a part of such decision as is the decision of the Referee, this court will consider the additional medical evidence before the Appeals Council that was not considered by the Referee to determine whether the findings of fact of the Secretary are supported by substantial evidence and whether the conclusions of law are correct.

The record shows that the plaintiff was born August 4, 1893, in Germany. She secured a primary education in Germany and later attended English and German language night school classes in the United States for one year. She worked as a seamstress sewing men's hats and caps from 1943 until November 19, 1946. On that date she was injured in an automobile accident and sustained a fractured pelvis, a comminuted compound fracture of the right tibia and fibula and a simple fracture of the right radius and ulna. She walked on crutches and wore a leg brace on the right leg until February 28, 1949, when she was admitted to Franklin Hospital to undergo a second sliding bone graft operation because of a nonunion of the right tibia. A month later she was discharged ambulatory on crutches with weight bearing on a long leg walking cast. The record shows that during the summers of 1949, 1950, 1951, and unspecified subsequent summers, the plaintiff was treated for

nervousness by Doctor Harry Benjamin. On April 24, 1951, the plaintiff slipped and fell while at home and sustained a supracondylar fracture of the right femur. It was treated by a pin and traction and she was discharged on July 8, 1951, with instructions to remain on crutches and in her brace. A month after the plaintiff filed her application for a disability freeze she was in a minor automobile accident. The main complaint was extreme nervousness.

In the original application for the disability freeze in October of 1955 the plaintiff stated, "for about the last ten months, I have been able to walk without crutches", and also, "after I've been out of bed for a few hours I get severe back aches." This testimony is substantiated in the report of E. R. Schottstaedt, M.D., of November 21, 1955. In his words, "At present she has some deformity of her right lower leg with approximately 1″ of shortening. She is able to be up and around and is moderately active." A medical report was submitted to the Department on March 21, 1956, by Stephen P. Erlach, M.D. It indicates that the examining physician is the brother of the plaintiff. This report concludes that the plaintiff has a compression fracture of spine (L1) and is "unable to engage in any professional occupation." The compression fracture of the lumbar spine is also mentioned in the letter of Doctor Erlach to the Social Security Administration of July 18, 1958. The History and Progress Report of Franklin Hospital made at the time of the plaintiff's admission after the auto accident in November, 1946, makes no mention of the compression fracture of the lumbar spine. In fact the Report on Roentgen Examination of Fullenlove, M.D., states "There is no evidence of bone injury. The vertebral bodies in the lateral view show no evidence of collapse." The compression fracture of the lumbar spine that Doctor Erlach mentions was not reported elsewhere. Upon this evidence, the finding of the Referee which omits the compression fracture of the lumbar spine from the principal impairments of the plaintiff is supported by substantial evidence.

The Referee also found that from "1946, the date when the plaintiff was injured, to approximately 1949, during which period she was required to use crutches in order to ambulate, would indicate a substantially total disability for that period so far as her ability to engage in any gainful activity was concerned." This finding is supported by the statements in the original application of the plaintiff and the medical evidence presented. This Referee indicates while the plaintiff was on crutches she was unable to engage in "any gainful activity."

The statute defines disability as the "inability", in the prescribed circumstances, to engage in "any substantial gainful activity." The finding of the Referee that the plaintiff was unable to engage in "any gainful activity" while made upon a standard of greater impairment than required by law, is not prejudicial to the plaintiff. And the finding that the plaintiff is unable to engage in "any gainful activity" would necessarily subsume a finding that the plaintiff is unable to engage in any "substantial gainful activity."

The Referee found that as a result of medical attention and surgery claimant's impairments have ultimately been corrected to the extent that she is able to ambulate without the use of any prosthesis. This refers to the fact that the plaintiff has her right shoe built up approximately one inch in order to take care of the shortening of the right leg resulting from the 1946 automobile accident. And the plaintiff takes pills which for three or four hours control the nervousness for which she has been sporadically treated since her automobile accident in 1946. There is no evidence in the file to support the finding that the backaches of which the plaintiff has consistently complained have been controlled. The fact that the plaintiff assisted her brother in his butcher shop as cashier on Saturday afternoons during the summer of 1953 alone does not support a finding that the plaintiff was able to en-

gage in substantial gainful activity. At the hearing plaintiff testified that she was hardly able to get home after work, and that she was forced to lie down before the job, that she had backaches and pains around the waistline, and that she finally recognized that she was unable to do the work. The fact that the plaintiff attempted such activity does not show that the plaintiff was not under a disability.

"An understanding of human nature reveals that a person may attempt such sporadic and limited work not because of his ability to work but because of his unwillingness to live a life of idleness even though he be totally and permanently disabled within the meaning of Section 216(i)."

See Berry v. United States, 1941, 312 U.S. 450, 455–456, 61 S.Ct. 637, 85 L.Ed. 945.

The Referee found that her condition progressively improved from 1953, when she cashiered for her brother, until 1955, the date of the application. The testimony of the plaintiff is to the contrary. Also, the report of Doctor Schottstaedt on December 18, 1957, indicated that the condition of the plaintiff was static as of that date and no improvement could be expected. The record is devoid of evidence that the plaintiff did improve from the summer of 1953 to the date of application. The evidence available indicates that the plaintiff did not improve and was at the date of the filing of the application still totally disabled. The Referee found that the plaintiff did not have a disability that was permanent or of a long continued or indefinite duration. At the time of the hearing the medical testimony all indicated that the condition would be indefinite. Under the present state of the record the finding of the Referee that the plaintiff was not disabled for a long continued and indefinite period thereafter was not supported by substantial evidence.

The Referee found that the plaintiff had failed to establish that she had been continuously precluded from engaging in any substantial gainful activity by reason of physical impairments of an extent and degree which would not "normally preclude such activity," and which impairments were not subject to substantial correction or repair by proper and appropriate medical attention and procedures. The Referee should have determined whether *this* claimant was disabled because of the impairments suffered. It is not sufficient to determine that the degree of impairment would not normally preclude such activity. If the Referee found that a sixty-two year old woman, with eight years of primary education in a foreign country, one year of night school English, a nervous condition that can be relieved for three or four hours by medication, backaches which require bed rest after four hours, a right leg shortened one inch and built up by a shoe, a right arm that tired of sewing within a few hours and can not be used to lift anything, and a Steinman pin in her hip, would not normally be under a disability as defined in § 416(i), such finding is not supported by substantial evidence in the record.

The Referee found that it is without a doubt that the claimant has at all times since November 19, 1946, suffered from an impairment or impairments which are permanent, but the effect of the foregoing finding is that such permanent impairments as the claimant suffers have not been of sufficient severity and extent continuously to preclude her from engaging in "some activity which is gainful." This standard by which the activities of the plaintiff were judged is incorrect. It is true that in 1953 for the Saturday afternoons during the summer the plaintiff received the cash at her brother's butcher shop. And this work is "some activity which is gainful." But the statute requires that the complainant have impairments severe enough to cause her to be unable to engage in "substantial gainful activity." The part-time attempt of the claimant has been given too much emphasis by the Referee. Although it may be construed as some activity which is gainful it certainly is not substantial gainful activity.

The Referee found that the claimant has by her activities demonstrated some ability to engage in activities *"which could be gainful."* This standard is incorrect. It is true that the complainant indicated in response to a question of the examiner that she was able to "hold a pencil." This response is not substantial evidence that a sixty-two year old woman with a primary education in a foreign country is able to perform as a secretary.

It is the finding of the court that the plaintiff has sustained her burden of establishing a period of disability from the date of the accident in November, 1946, until the filing of the application for a disability freeze in November, 1955, and that the finding of the Referee to the contrary is not supported by substantial evidence and is not in accordance with the law.

Therefore,

(1) The defendant's motion for summary judgment is hereby denied.

(2) The plaintiff's motion for summary judgment is hereby granted.

(3) The decision of the Referee is hereby reversed; and

(4) The case is remanded to the Secretary of Health, Education and Welfare, with directions that plaintiff be granted a period of disability in accordance with this decision.