**Ruby H. SNELLING, Plaintiff,**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**No. AC/439.**

United States District Court
E. D. South Carolina,
Aiken Division.

Oct. 13, 1961.

Henderson, Salley & Cushman, Aiken, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., Frank H. Cormany, Sr., Asst. U. S. Atty., Aiken, S. C., for defendant.

CHARLES CECIL WYCHE, District Judge (sitting by designation).

This action is brought pursuant to 42 U.S.C.A. § 405(g) to review a decision by the defendant which held that plaintiff is not entitled to the benefits of the disability freeze provision of the Social Security Act. That provision, 42 U.S.C.A. § 416(i) (1), defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration," and Section 416(i) (2) states that a "period of disability" must be "a continuous period of not less than six full calendar months * * * during which an individual was under a disability * * *." This period of low or zero income will be eliminated from the wage earner's records, increasing his "average monthly wage" and consequently the amount of future old age benefits.

The basic facts in this case are not in dispute.

The plaintiff is a married female, who was born on December 25, 1899, in Graniteville, South Carolina. She left

school during the seventh grade of elementary school, and she has had no further education, vocational or otherwise, since that time. At the age of eleven years she began work as a spooler in a cotton mill. She continued such employment until October 19, 1956, at which time she was retired because of physical inability to perform any available job in the cotton mill, for which she was qualified. Excluded from this period of employment are those periods required for the giving of birth to three children. Likewise excluded is that period of approximately six months required for treatment of, and for partial recuperation from, injuries sustained on June 15, 1949, in an automobile accident. Further from the time of her marriage, very early in life, until a few years ago, plaintiff has performed, without outside assistance, her duties as a housewife and a mother. The employment of plaintiff has been exclusively confined to one employer, and to manual labor jobs in the cotton mill such as warping, tying, grading and tacking. Such training, education and skill as plaintiff possesses are solely derived from, and entirely encompassed within the foregoing experiences.

On June 15, 1949, plaintiff sustained in an automobile accident a severe fracture of her right ankle, a fracture of her right wrist, an injury to her back and fractures of several ribs. She was unable to recover fully from these personal injuries. By reason of manual labor performed in the course of her employment and by reason of the injuries aforesaid, her physical condition over the years has steadily deteriorated with increasing manifestation of objective symptoms as follows: severe traumatic arthritis of the right ankle joint; marked swelling of right ankle; a decided limp when walking; chronic thrombophlebitis of right leg; post traumatic changes in lower dorsal region involving an intervertebral disc; arthritic changes in lumbar region of spine, sacroiliac joints, and upper dorsal region; marked limitation of motion in lower dorsal region; marked muscle spasm in lumbar region of spine; and, a dependent, pitting edema in her legs. In addition to the foregoing, plaintiff has manifested increasing subjective symptoms of pain, inability to stand for any significant period of time, inability to sit comfortably for any significant period of time, inability to move about for any significant distance or for any significant period of time. By reason of her physical condition, plaintiff has been compelled since the date of her retirement to take daily periods of bed rest. Before the date of her retirement and since that time she has been compelled to wear continuously an elastic stocking, to take pain-relieving drugs in large amounts, to wear modified shoes, and to curtail drastically all forms of physical activity. These therapeutic measures have all been directed almost exclusively toward the relief of pain and discomfort and attending physicians have been unable to prescribe any therapeutic measures which could be or would be of substantial usefulness in the direction of effecting a cure of the ailments suffered by plaintiff.

The record indicates that plaintiff has not as yet manifested any neurological changes or mental impairment.

For the reasons hereinbefore stated, plaintiff was compelled to seek and to receive treatment from Dr. C. G. Henry of Augusta, Georgia, from February 21, 1951, through May 16, 1957. Despite such treatment, the physical condition of plaintiff continued to deteriorate and in December, 1955, plaintiff became unable to continue performing the usual and customary duties to which she had been long assigned. On the advice of her attending physician, she requested and was granted assignment to a job with lighter duties on December 18, 1955. She attempted to perform these new duties, but because of increasing physical disability, she was ordered by her attending physician to cease work entirely on October 19, 1956.

Household activities of the plaintiff are limited to the following: preparation of breakfast; preparation of a late-afternoon meal; light dusting, and spreading covers over her bed. However, these

household pursuits must be interrupted by periods of bed rest. Outside activities of the plaintiff are limited to occasional trips to the grocery store in the company of persons who can provide transportation and who can assist in shopping.

Medical opinions appearing in the record are unanimous in the prognosis that plaintiff's physical condition cannot be expected to improve, with or without treatment. It appears to be a matter of reasonable medical certainty that plaintiff will undergo the experience of constantly declining physical activity for the balance of her life. Any medication presently available for use by the plaintiff can be directed only to the temporary relief of pain and other discomfort.

Medical opinions appearing in the record are strong and specific with respect to the extent of plaintiff's disability. Under date of October 30, 1956, Dr. C. G. Henry summarized his medical findings and professional conclusions as follows: "In my opinion Mrs. Snelling is totally and permanently disabled for work." Again, under date of May 17, 1957, Dr. Henry stated as his opinion the following: "Slowly getting worse. No improvement can be expected." Under date of February 15, 1958, Dr. John A. Faulkner summarized his findings and conclusions as follows: "Because of post-traumatic arthritic changes in the right ankle, the patient is unable to do any type of work which will require her to stand. Because of the severe post-traumatic arthritic changes in the dorsal, lumbar spine, and sacroiliac joint, it is impossible for the patient to do any type of work in a sitting position. If any further information is required, I will be more than glad to comply with your request." (This information appears on medical report directed to Department of Health, Education and Welfare.) Under date of February 18, 1958, Dr. J. C. Pearce summarized his findings and conclusions as follows: "As a result of the traumatic arthritis and pain on movement she is unable to do any kind of work that causes her to sit or stand for any length of time."

In addition to the foregoing, the Hearing Examiner recognized the serious and substantial nature of the ailments being suffered by plaintiff, as will appear by reference to the following language set forth in his decision: "Although the evidence unquestionably shows that the claimant has suffered a serious loss of function in her right ankle and foot * * *"; and again, "The evidence also makes it clear that the claimant has post traumatic arthritic changes in the spine * * *".

It appears to be uncontradicted that plaintiff is and has been suffering from a physical impairment which can only be expected to be of long continued or indefinite duration.

The single issue in this case arises from the conclusion of the Hearing Examiner with respect to plaintiff's ability to engage in any substantial, gainful activity. This conclusion finds expression in the record in the following language: "Neither the medical findings nor claimant's testimony would support a conclusion that she is unable to engage in any substantial gainful activity in the foreseeable future." Reconciliation of the conclusion of the Hearing Examiner with the uncontradicted facts respecting the physical condition of the plaintiff can be accomplished only by a construction of the pertinent statutory language which places greatest stress on the word "any" appearing in the phrase "any substantial gainful activity". In effect, the conclusion expressed by the Hearing Examiner constitutes a strict construction of the pertinent provision of the statute, and places primary and heaviest emphasis upon the word "any" appearing in the statute, while affording to the words "substantial" and "gainful", which likewise appear in the statute, only secondary and casual emphasis. It further appears that the Hearing Examiner has considered the statutory requirement of "inability to engage in any substantial, gainful activity" to be equivalent to or synonymous with a general standard of

"total disability". Such a construction is not only contrary to the explicit provisions of the statute, but also is without support in the large majority of cases.

■ In reviewing the decision of the referee, the District Court is authorized to perform its conventional judicial function. 42 U.S.C.A. § 405(g); 5 U.S.C.A. § 1009; Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 490, 95 L.Ed. 456, 71 S.Ct. 456; Goldman v. Folsom, 3 Cir., 246 F.2d 776; Boyd v. Folsom, 3 Cir., 257 F.2d 778; Shields v. Folsom, D.C.Pa., 153 F.Supp. 733, 734; Julian v. Folsom, D.C.N.Y., 160 F.Supp. 747; Bostick v. Folsom, D.C.Ark., 157 F.Supp. 108; Hill v. Fleming, D.C.Pa., 169 F.Supp. 240; Rafal v. Flemming, D.C.Va., 171 F.Supp. 490; Jacobson v. Folsom, D.C.N.Y., 158 F.Supp. 281.

The District Court is bound by the decision of the referee only if his findings and inferences were based upon substantial evidence and the law was properly applied by him. Carroll v. Social Secur. Board, 7 Cir., 128 F.2d 876; Carqueville v. Folsom, D.C.Ill., 170 F.Supp. 777; Ray v. Social Secur. Board, D.C.Ala., 73 F.Supp. 58; Dunn v. Folsom, D.C.Ark., 166 F.Supp. 44; Bostick v. Folsom, D.C. Ark., 157 F.Supp. 108; Fuller v. Folsom, D.C.Ark., 155 F.Supp. 348; Shields v. Folsom, D.C.Pa., 153 F.Supp. 733; Rafal v. Flemming, D.C.Va., 171 F.Supp. 490. See also Davis v. Flemming, D.C.Mo., 23 F.R.D. 139, 141.

It is well settled, needing no citation here, that findings of law are not binding on this Court, and where the law has been misapplied, this Court may properly correct the errors below. Adams v. Flemming, D.C.Vt., 173 F.Supp. 873.

■ The substantial evidence required to support the decision of the referee in the District Court is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be based upon the record as a whole. 42 U.S.C.A. § 405(g); 5 U.S.C.A. § 1009; Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126; E. Edel-

mann & Co. v. Federal Trade Comm., 7 Cir., 239 F.2d 152; Gooding v. Willard, 2 Cir., 209 F.2d 913; Boyd v. Folsom, 3 Cir., 257 F.2d 778; Julian v. Folsom, D.C.N.Y., 160 F.Supp. 747; Aaron v. Fleming, D.C.Ala., 168 F.Supp. 291; Hill v. Fleming, D.C.Pa., 169 F.Supp. 240.

■ Implicit in the test of an individual's ability to engage in any substantial gainful activity under section 216(i) (1) of the Social Security Act is that the gainful work be commensurate with the claimant's age, educational attainments, training, experience, and mental and physical capacities. 42 U.S. C.A. § 416(i) (1); Aaron v. Fleming, D.C.Ala., 168 F.Supp. 291; Hill v. Fleming, D.C.Pa., 169 F.Supp. 240; Jacobson v. Folsom, D.C.N.Y., 158 F.Supp. 281; Dunn v. Folsom, D.C.Ark., 166 F. Supp. 44; Bostick v. Folsom, D.C.Ark., 157 F.Supp. 108; Stamper v. Folsom, D. C.Wash., 2 P–H Social Security Texas para. 36210.

■ The Social Security Act should be liberally construed in favor of those seeking its benefits. Carroll v. Social Secur. Board, 7 Cir., 128 F.2d 876, 881; Ray v. Social Secur. Board, D.C.Ala., 73 F. Supp. 58; Carqueville v. Folsom, D.C. Ill., 170 F.Supp. 777.

In the case of Harper v. Flemming, 4 Cir., 1961, 288 F.2d 61, 64, Chief Judge Sobeloff said: "The purpose, as reported by the Congressional Committees, is clearly to make the coverage of the program 'as nearly universal as practicable,' and 'to give the newly covered groups equitable treatment as compared with those brought in earlier.' (Senate Calendar No. 2156, 84th Cong. 2d Sess. Rept. 2133, p. 1.) The legislation had its origin in the observed frequency of the tragic sequence of old age, disability, loss of earning power, destitution and dependency on public or private charity, but coverage has not been limited to cases actually presenting all these features in full scope. The concept of the statute is more inclusive, and the design is, by a comprehensive contributory insurance plan, to avert the personal hazards and

the social problems which often, but happily not always, attend old age.

"There is no warrant for reading into the statute fine-spun limitations of which the legislative authority has given no intimation. Doubtless Congress could have narrowed the criteria for coverage in the manner suggested, but the coverage sections are not so expressed. If the 1956 Amendment is to be constructed to embody what seems to us a gratuitous assumption that is the function of Congress. Looking at what Congress has done, we do not think that it would have been willing to adopt the Secretary's suggestion if it had been advanced; at all events it has not done so. Even if the question were more doubtful than it appears to us, we should be in duty bound to give the Act a liberal construction. We would not be free to tailor the Act, even if we found the proposed restriction logically attractive. The conclusion we reach is in accord with the only pertinent decision called to our attention. Henderson v. Flemming, 5 Cir., 1960, 283 F.2d 882, and see Foster v. Flemming, D.C.N.D.Iowa, 1960, 190 F.Supp. 908."

"Test of eligibility for disability freeze under Social Security Act must include consideration of claimant's background, experience, training, education, physical and mental capabilities, whether type of employment he has followed is open to him and absence of any indication of specific work which he can perform existing in general area where he lives." Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591.

"The referee, no doubt, in defining 'disability,' placed upon the phrase 'any substantial gainful activity' an objective test, although he uses language to the contrary. But surely the test must be subjective—surely our ever-enlarging bureaucracy has not yet reached the stage of 'expertise' that it can depersonalize a person's illnesses. Subjectiveness *must* be the test, * * *." Aaron v. Fleming, D.C.Ala., 168 F.Supp. 291, 294, 295.

Each and every claimant under the Social Security Act is entitled to have his or her case considered in the light of the individual, particular facts and circumstances surrounding such a claim. The very wording of Section 223 of the Social Security Act, 42 U.S.C.A. § 423, makes the point most strongly that each case and each person must be considered individually. That section sets forth that "every individual" who meets the requirements and is under a disability shall be entitled to a disability insurance benefit. In the case of Dunn v. Folsom, D.C.Ark., 166 F.Supp. 44, 48, there appears a recognition of this construction in the following language: "But the act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has. * * * Thus, if a medically determinable physical impairment exists, the court should consider whether such impairment prevents the particular plaintiff from engaging in any substantial gainful activity for which he is qualified, and to that end may consider his education, training, and experience, as well as the nature and extent of the impairment itself."

Nowhere does there appear in the act any reference to a requirement of "total disability". The official interpretation of this phrase as presented to Congress by representatives of the Department of Health, Education and Welfare, does not support the position taken by the defendant in this case. As was said in the case of Adams v. Flemming, D.C. Vt., 173 F.Supp. 873, 879: "The Social Security Administration, in an effort to answer some of Senator Byrd's questions, submitted a statement setting forth their stand on the disability freeze provisions. See Page 43 of the hearings. Therein the Department acknowledged that the concept of 'substantial gainful activity' is a growing one which must be treated in each instance on the facts. The Department states on Page 43 of the hearings: 'Substantial gainful activity means the performance of substantial services

with reasonable regularity in some competitive employment or self-employment. It relates to the range of activities the individual can perform * * * complete helplessness is not necessary to a finding of an allowable disability. Sporadic or infrequent activity would not necessarily establish ability to engage in substantial gainful activity.' "

■ The phrases "inability to perform any substantial gainful activity" and "total disability" are not synonymous. In the case of Aaron v. Fleming, D.C.Ala., 168 F.Supp. 291, Judge Rives, Judge of the Fifth Circuit, sitting in the District Court, said: "It is further apparent that the referee gave too strict an application to 'disability.' Even though the Act is worded in strong language and the Congressional history indicates a strict policy of application, to conclude in this case that the plaintiff is not 'disabled' within the meaning of the Act would make 'disability' commensurate with 'helplessness', 'bed-ridden,' or 'at death's door.' No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties and some degree of mobility, he is not in the strictest sense unable to perform '*any* substantial gainful activity.' I do not interpret the Act to apply only to the totally helpless and bed-ridden nor to those at death's door."

In the case of Hall v. Flemming, 6 Cir., 1961, 289 F.2d 290, 291, the rule of construction is stated as follows: "However, in the determination of this appeal, the controlling questions are: (1) what can appellant do; and (2) what employment opportunities are there for a man who can do only what appellant can do?" See also, Kerner v. Flemming, 2 Cir., 283 F.2d 916, 921.

Despite the uncontradicted medical evidence in this case, the Hearing Examiner has made a determination that there is some conceivable form of substantial, gainful activity in which plaintiff can engage although she is. unable to work either while standing or while sitting. The record, however, is devoid of any evidence, or even of any suggestion, of any specific type of employment which would be suitable for this plaintiff. Likewise, the record is devoid of any evidence, or even any suggestion, as to any type of employment which might be available for this plaintiff or for which a reasonably stable market exists. The decision of the Hearing Examiner has placed upon this plaintiff an unreasonable and unwarranted requirement with respect to the burden of proof to be borne by her.

In the case of Sebby v. Flemming, D.C. Ark., 183 F.Supp. 450, 454, the court said: "Throughout the record the defendant and the Referee have placed great stress on the adjective 'any' which precedes the phrase 'substantial gainful *activity*.' *Whenever possible, the word* 'any' is underscored in the record. However, the word 'any' must be read in the light of what is reasonably possible— not what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It is not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

The case of Hier v. Ribicoff, D.C.Ill. 1961, 194 F.Supp. 22, 25, is particularly applicable to this case, wherein the Court said: "The Examiner despite the fact that he conducted the interrogation of plaintiff, without limitation as to scope was unable to discover any specific area of employment available to claimant. True, there was some evidence that a sedentary type of employment, not requiring plaintiff to move about, might have been suitable. In this case, however, there was no evidence such occupations were available. Abstract speculation by the Examiner or Appeals Council *as to a possibility of employment is not* evidence which a claimant should have to refute; if it were, disability could never exist."

Equally applicable are the words of the Court in the case of Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591, 595, as fol-

lows: "When the Claimant could no longer even shuffle dominoes, he was not required by the use of a catalogue of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment."

There is an unusual similarity in the facts in the case here under consideration and the facts in the case of Leath v. Flemming, D.C.Ala.1960, 191 F.Supp. 577, 578, where Chief Judge Lynne held that the determination of the Secretary of Health, Education and Welfare was not supported by substantial evidence where the claimant who suffered from arthritis so severe that he could not remain standing or sitting for long, could walk only short periods of time, and could drive only very short distances, was not so disabled as to preclude him from performing gainful activity within Social Security Law, and said in conclusion: "The result reached in this case is so incredible as to be shocking. To approve it would be to make a mockery of justice. The Congress did not intend to hold a promise to the ear of one so hopelessly disabled as this plaintiff only to break it to his hope."

An excellent summary of legal principles applicable to the question here being considered, appears in the case of Randall v. Flemming, D.C.Mich.1961, 192 F.Supp. 111, 123, in the following language: "To summarize, the courts have generally agreed that the test of a claimant's disability or inability to engage in any substantial gainful activity is a subjective one, that is, what is reasonably possible in the light of the plaintiff's physical and mental capacities and his education, training, and experience. It is not necessary that the plaintiff establish the complete absence of any opportunity for substantial gainful employment; he need only establish that he has become disabled from employment in any work or vocation in which he could profitably seek employment in the light of his physical and mental capacities and his education, training, and experience.

Furthermore, it is clear that a plaintiff need not be totally helpless or bedridden in order to be considered disabled under the Social Security Act.

"See also Kerner v. Flemming, 2 Cir., 283 F.2d 916, 921; Adams v. Flemming, 2 Cir., 276 F.2d 901, 904; Kohrs v. Flemming, 8 Cir., 272 F.2d 731, 736; Ellerman v. Flemming, D.C., 188 F.Supp. 521, 527; Harrison v. Flemming, D.C., 187 F.Supp. 358, 359; Corn v. Flemming, D. C., 184 F.Supp. 490, 493; Haxton v. Flemming, D.C., 183 F.Supp. 2, 6; Sebby v. Flemming, D.C., 183 F.Supp. 450, 454; Pruitt v. Flemming, D.C., 182 F. Supp. 159, 163; Parfenuk v. Flemming, D.C., 182 F.Supp. 532, 535, 536; Blevins v. Fleming, D.C., 180 F.Supp. 287, 293; Dean v. Flemming, D.C., 180 F.Supp. 553, 556; Lease v. Fleming, D.C., 178 F. Supp. 169, 171; Stitely v. Fleming, D.C., 178 F.Supp. 357, 359; Sobel v. Flemming, D.C., 178 F.Supp. 891, 894, 895; Jacobson v. Folsom, D.C., 158 F.Supp. 281, 286.

"For cases to the contrary see Chesney v. Flemming, D.C., 180 F.Supp. 437, 439; Liles v. Flemming, D.C., 176 F. Supp. 303, 305; Fuller v. Folsom, D.C., 155 F.Supp. [348] 349, 354."

After a careful examination of the record in this case and the foregoing authorities, I am of the opinion that the final decision of the Secretary is not supported by substantial evidence and is clearly erroneous. On the contrary, the conclusion that plaintiff is unable to engage in any substantial gainful activity appears self-evident to me. Plaintiff in this case is the victim of a medically determinable impairment of serious and substantial proportions which can only be expected to be of long and indefinite duration. As a direct result of this impairment plaintiff has been unable since October, 1956, to follow her life-long employment in manual labor jobs in the cotton mill after being compelled to terminate same despite her willingness and desire to continue working. Plaintiff's physical impairment, when considered in connection with her individual circumstances of age, work experience, educa-

tion, training and skill, serves to eliminate effectively, any reasonable possibility of suitable employment or employment for which plaintiff is qualified; she is unable to perform any substantial service with reasonable regularity in some competitive employment or self-employment.

Under the foregoing authorities, I must conclude, that the findings of the referee as to the establishment of a period of disability and disability insurance benefits are not supported by substantial evidence on the record considered as a whole and under the authority for appeal given by 42 U.S.C.A. § 405(g) the conclusion of the Secretary that the claimant was not entitled to the period of disability and the disability insurance benefits was clearly erroneous, was incorrect, and must, therefore, be reversed.

It is, therefore, ordered, that the decision of the Secretary in this case be and the same is hereby reversed, with direction that judgment be entered for the plaintiff.