**Laurie B. RICHARDSON, Plaintiff,**
v.
**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

Civ. A. No. AC-429.

United States District Court
E. D. South Carolina,
Aiken Division.
May 18, 1962.

Murdaugh, Eltzroth & Peters, Hampton, S. C., for plaintiff.

Frank H. Cormany, Sr., Asst. U. S. Atty., Aiken, S. C., for defendant.

TIMMERMAN, Chief Judge.

This is an action by plaintiff for a court review of a decision of the Secretary of Health, Education and Welfare pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C.A. § 405(g)). The final decision of the Secretary, March 29, 1961 (Tr. 2–18), by the Appeals Council of the Social Security Administration, held that the plaintiff had failed to establish that he had been continuously unable to engage in any substantial gainful activity because of physical or mental impairments beginning in July 1951, or prior to January 1956.

On March 5, 1957, plaintiff filed an application to establish disability, using the forms prescribed by the Department of Health, Education and Welfare. Then followed the filing of an application to establish disability and a questionnaire relative to the period of disability, both on forms prescribed by said Department (see Tr. 94–104). While the forms were signed by the plaintiff the information shown on them is in the handwriting of another, perhaps that of a clerk in the Social Security office. These filings were later put in evidence by the Hearing Examiner. From them it appears that the plaintiff was born November 14, 1899; that he is a resident of Hampton, S. C.; that he has been suffering pain from arthritis, which caused his joints to swell so that he could hardly go; that the pain was so great that he could not sleep at times; that standing caused his legs to hurt; that the only thing in the nature of work he did was to drive his daughters to work and help his wife with chores around the house by bringing in firewood and helping with the dishes; that prior to his disability he operated a stick machine for the Plywood Plastics Corporation at Hampton, S. C., in making doors and did ordinary labor which necessitated standing on his feet and doing heavy lifting at times. That prior to working for Plywood Plastics he farmed.

There was also received in evidence medical reports from two doctors who had attended the plaintiff, viz., Dr. Carr T. Larisey and Dr. James A. Hayne (Tr. 102, 105). The medical report of each of these Doctors was given on a government prescribed form. From Dr. Larisey's report, under the heading "Present Condition" (3/6/57), it appears that plaintiff had pain, swelling, tenderness in joints—especially in the dorsal and lumbar regions—and pain in chest on exertion; swelling and tenderness in knees and ankles; brachial and radial sclerosed

moderately; prostate enlargement; but he was able to walk. Under the heading "Diagnosis", Dr. Larisey stated that the plaintiff was suffering from osteo-arthritis, marked in spine and knees; also arteriosclerosis and angina as well as prostatitis. This Doctor further stated that he first visited the plaintiff in 1951 and that he had seen him about once a month since that time, the last time 3/6/57, the date of a certificate he signed. He gave it as his opinion that the plaintiff's condition was slowly progressive and that he had advised him not to try to work; that he suffered from dyspnea on moderate exertion; that an x-ray showed marked osteo-arthritis of the spine; that his knees were swollen and tender, and he had nodulose phalangeal joints. (See exhibit 11 1/31/58.) This Doctor who had treated the plaintiff since 1951, seeing him practically every month, wound up his statement, under the heading "Remarks", by saying:

Due to marked osteo-arthritis and moderate arteriosclerosis applicant [plaintiff] is unable to engage in any gainful occupation. I have treated patient in conjunction with Dr. J. A. Hayne, Hampton, S. C."

Dr. J. A. Hayne's statement, bearing date March 5, 1957 (Tr. 104, 105) is in most, if not in all, respects in agreement with the statement of Dr. Larisey. See Exhibits 12 (1/28/58) and 16 (11/18/58). He reported that the plaintiff had pains, swelling and tenderness in his joints, especially in the dorsal and lumbar spine; pains in chest on exertion; swelling and tenderness in knees and ankles; bracials and radials moderately sclerosed; osteo-arthritis marked in spine and knees; and arteriosclerosis, and angina. Dr. Hayne also has had plaintiff under his professional care since 1951, practically every month. Dr. Hayne also stated that an x-ray showed marked osteo-arthritis of the spine; and additionally that plaintiff's knees were swollen and tender and that he had nodules on phalangeal joints. Under "Remarks" he stated:

"Due to marked osteo-arthritis and moderate arteriosclerosis applicant [plaintiff] is unable to engage in any gainful occupation".

On page 106 of the transcript another statement from Dr. Hayne is found at the bottom of a letter written by a Mr. Marett to the plaintiff under date April 5, 1957. What is written and signed by Dr. Hayne is dated April 6, 1957. It follows:

"X-rays of lumber spine 11/2/54 show marked lipping and spurring of 3rd and 4th lumbar vertebrae on both A.P. and lateral views. X-rays of the other joints were not taken due to the expense and limited funds of the patient. The external findings are obvious so he was not subjected to this expense. Limitation of motion was very small but pain on motion is fairly moderate".

There are a few relevant facts in this case which appear to be conceded. One is that the plaintiff is suffering with osteo-arthritis of the spine.

Dr. T. A. Amburgey, Savannah, Ga., examined the plaintiff in this case at the request of the defendant and his report was offered in evidence as Ex. AC–1 and it appears in the transcript on pages 121 and 122. In his report Dr. Amburgey had this to say:

" * * * It is impossible for me to explain this patient's generalized pain over the entire body and all joints on a basis of organic pathology. There is the problem of the laboratory findings of an increased white blood count plus the increased sedamentation rate. This finding could result from a local infection somewhere in the body or it could be *associated with the rheumatoid condition*. To find the cause of this would require hospitalization and a more extensive work-up. *On objective evaluation* of his limitation in muscular skeletal function, *it is my impression that he suffers a perma-*

*nent partial disability of twenty-five percent as the result of osteo-arthritis of the spine.* Should the evaluation of his impairment be based on his complaints of pain on motion, of course, it would be one hundred per cent." (Emphasis added.)

It is noted that Dr. Amburgey says without qualification, as I understand the meaning of his writing, that the plaintiff suffers a twenty-five per cent permanent partial disability, based solely on the objective finding of osteo-arthritis of the spine. He also states that laboratory findings suggest the propriety, if not the absolute need, for further examination to determine if plaintiff is suffering a greater degree of disability. Two Doctors, Larisey and Hayne, who had treated the plaintiff for six years and had seen him on an average of once a month, are of the opinion that the plaintiff is suffering a far greater degree of disability, and Dr. Amburgey indicates that he might agree with them if he had an opportunity to make other and further examinations of the plaintiff. There is nothing in the record that warrants a show of disrespect for the opinions of these Doctors. However, two of them have had a far better opportunity to judge the issuable disability of the plaintiff than have the other two.

There was also offered in evidence on behalf of the defendant a report, in letter form, made by Dr. Fenwick T. Nichols, Jr., of Savannah, Ga. It consists of little more than four pages, single spaced and in small type. It is dated August 15, 1960. Much of the first four pages of this report is used to emphasize the plaintiff's lack of education and intellectuality, his lack of ability to chronologically state the time and duration of every pain and physical ailment he had suffered during the preceding period of 8 or 9 years, with a detailed accurate description of each attack in the order of their occurrence. On the first page of his report Dr. Nichols states that the plaintiff "is a poor historian and much of the questioning had to be done by asking *leading questions, casting doubt*

on the reliability of the resulting answers". (Emphasis added.) He finally ties himself down at the top of page 5 to these three "Impressions":

"1) The history is compatible with coronary artery disease and coronary insufficiency although not typical. There has been no test made with Nitroglycerin as far as I am able to tell except for one occasion in Dr. Lariscy's office a year ago and then he stated it took 15 to 20 min. ('a long time') for relief. Actually, I am not at all certain that he has heart disease from this one observation.

"2) Benign prostatic hypertrophy.

"3) Chronic bronchitis and pulmonary emphysema."

It is noted that Dr. Nichols says that the history of the plaintiff's complaint is "compatible with coronary artery disease and coronary insufficiency". From what he otherwise said he might have added that such history is compatible with arthritis. The other Doctors agree that he has osteo-arthritis of the spine. As may be seen by reference to Dr. Amburgey's quoted statement, the plaintiff has a 25% disability based solely upon objective findings due to osteo-arthritis of the spine alone; and he quickly added that if the evaluation of the plaintiff's impairment should be based on his complaints of pain on motion his opinion would be that the plaintiff is suffering a 100% disability. Doctors Larisey and Hayne say that arthritis of other joints is obvious, so obvious as to need no x-ray confirmation. Even Dr. Nichols did not say there was no arthritis. He just skipped it.

What is this thing arthritis? Is it not common knowledge that it is a producer of pain; that pain is one of its expected symptoms? Laying aside consideration of common knowledge, What does the dictionary say about arthritis, medically speaking? The dictionary says it is "inflammation of the joints; specif., gout". And, What is inflammation? There is a common

knowledge about it too, but the dictionary, medically speaking, says it is "a morbid condition consisting in conjestion of blood vessels and exudation of plasma and blood corpuscles; it is manifested by redness and swelling, attended with heat and pain"; and What is "gout"? It is "a metabolic paroxysmal disease marked by painful inflammation of the fibrous and ligamentous parts of the joints, deposits of urate or sodium in and around the joints, and an excess of uric acid in the blood". It seems strange that an intelligent Doctor would be unable to ascertain whether a patient was suffering from arthritis, a disease with such marked characteristics. Doctors have been objectively determining its existence for years and treating it. The difficulty about it is not in finding it, but in curing it.

All four of the Doctors agree that the plaintiff has been suffering from emphysema and/or dyspnea, although Dr. Nichols characterizes it as moderate. Emphysema's counterpart is found in horses where it is generally referred to as heaves or wind-broken. In any event the effect of emphysema is to impair one's breathing. Hence it would seem ridiculous that a person depending upon physical labor and exertion for gainful employment could expect to be so employed when at least 25% of the time he would be in pain from arthritis and when all of his work time he would be gasping for breath.

The recent case of Snelling v. Ribicoff, D.C., 198 F.Supp. 432, is similar to the instant case and this Court is in agreement with the opinion therein, written by Chief Judge Wyche of the Western District of South Carolina. It cites and intelligently analyzes many of the antecedent cases of like import.

The Court of Appeals for the Seventh Circuit in Teeter v. Flemming, 270 F.2d 871, stated:

"The Social Security statute does not require applicant to be completely helpless, but to be unable to engage in substantial and gainful activity (commensurate with his age, educational attainments, training, experience, mental and physical capacities) by reason of a medically determinable physical or mental impairment. Aaron v. Fleming, D.C. Ala.1958, 168 F.Supp. 291, 295.

"The activity in which applicant must be able to engage must not only be gainful but substantial. Dunn v. Folsom, D.C.Ark.1958, 166 F.Supp. 44, 49."

In the Teeter case, as in the present case, the Referee found that there was a lack of objective findings to show that Teeter was unable to work. The District Court determined that the Referee had equated "substantial gainful activity" with "any work of any kind, physical or mental, full time or part time" and under all the facts and circumstances of the case reversed the Secretary's decision and allowed benefits to the plaintiff. The Court of Appeals affirmed the District Court's judgment.

The Referee in his decision in the present case stated:

"After a careful consideration of the evidence of record, the referee finds that, *although claimant's impairments may have prevented him from continuing with his former employment by a plywood mill in a job requiring considerable standing and walking,* they have not been so severe as to make him continuously unable to perform any type of substantial gainful work at any time when he met the earnings requirements of the statute for disability purposes, and continuing to the date of the filing of his disability applications on March 5, 1957". (Emphasis added)

Under the proper interpretation of the Social Security Act this finding that plaintiff was and is unable to stand and walk sufficiently to perform his job as a stick operator is sufficient in itself to qualify plaintiff for disability benefits in the light of his age, experience and educational background.

The Appeals Council in its decision attacks the credibility of claimant

saying that he did not impress its physicians or the Hearing Examiner in this respect. There is nothing in the decision of the Referee that legitimately supports this contention. While it is true that the report of Dr. Nichols may tend to discount plaintiff's narration of his complaints, the ultimate conclusions of the Doctors that plaintiff is twenty-five per cent disabled from osteo-arthritis, has benign prostatic hypertrophy and chronic bronchitis and pulmonary emphysema, and other troubles which would require hospitalization and extensive examination to diagnose are sufficient to qualify plaintiff for disability benefits.

In short, plaintiff, age 57, seventh grade education, found by the Referee to be unable to hold a job requiring considerable standing and walking and found by the defendant's doctors to be disabled to the extent stated cannot reasonably be expected to qualify for any real job opportunity available to him. He is not an executive or learned; he is just a laborer. The defendant has made no suggestion as to any type work for which plaintiff might qualify. His doctors have not said anywhere in their reports that plaintiff is able to work in any capacity. Parsons v. Flemming, 187 F.Supp. 369 (E.D.Ark., 1960).

Disability under the Social Security Act is not commensurate with helplessness. It was not the intention of Congress to impose a test so severe as to make it necessary for a claimant to eliminate every possibility of gainful employment. Peck v. Ribicoff, 193 F.Supp. 450 (E.D.Va.1961). In the Peck case the Court granted disability benefits to the plaintiff even though the plaintiff was shown to engage in considerable physical activity.

In Pruitt v. Flemming, 182 F.Supp. 159, (S.D.W.Va.1960), at the bottom of page 163, the Court says "when he lost his capacity for manual labor he likewise lost his ability to engage in any substantial gainful activity". Although Pruitt had actually worked as a watchman and coal weigher under limited circumstances, the Court awarded disability benefits to him.

In Sebby v. Flemming, 183 F.Supp. 450, (W.D.Ark.1960) the Court reversed the Appeals Council and allowed disability benefits to a plaintiff born November 25, 1900, who lived on a 55 acre farm with his wife and daughter. Sebby assisted his wife in the raising of a few chickens and cows and attempted household tasks such as mowing the lawn, being forced to quit after a short time. It appears that he engaged in more activity than the present plaintiff but there is similarity in their circumstances. Sebby suffered shortness of breath and his doctor stated him to be 100% disabled due to a heart condition. The Social Security doctor rated him as a Class II or Class III heart with slight limitation of activity and thought he should be able to do some work. The plaintiff in the present case is rated as having a Class II heart and even the Social Security doctors do not say he can do any work.

Other cases of similar facts in which the Appeals Council was reversed and benefits awarded by the Court are Lewis v. Flemming, 176 F.Supp. 872 (E.D.Ark. 1959) and Leath v. Flemming, 191 F.Supp. 577 (N.D.Ala.1960).

The plaintiff in the Lewis case had arthritis in the lumbo-sacrol region of the back with severe pain in his back and legs and his doctors reported that he was unable to work. He was examined by a neuro-surgeon at the request of the Social Security Administration who reported that he had some disability and recommended further examination. Here again the Court says that plaintiff's inability to perform physical labor necessarily means that he cannot engage in any substantial gainful activity.

In the Leath case, the plaintiff suffered from osteo-arthritis of the spine and rheumatoid arthritis of the joints and according to his doctor could not work if standing, walking or bending was involved. He testified that he walked a half mile a day, drove a car, washed dishes and would hoe his garden as much

as 40 minutes at the time. The Court said that the Secretary laid great stress upon what the plaintiff said he could do but ignored plaintiff's further testimony that his arms and joints swelled, he couldn't stand on his feet long and if he sat down too long he couldn't get up.

Compare the testimony in the Leath case with that of the plaintiff in this case when he says on his initial application for benefits (Tr. 96) that commencing in 1951, "Arthritis. It pains me and causes my joints to swell so I can't hardly go. Ankles swell. Also have stomach trouble. The arthritis gives me so much pain I just can't go at times. Swelling of joints. Can't sleep." The statements on the application are affirmed in his sworn testimony. (Tr. 75) With reference to his chest he is not without pain at all unless he takes something for it. (Tr. 78)

His complaints are confirmed by Dr. Hayne and Dr. Larisey, who say repeatedly that since 1951 he has pain, swelling and tenderness in his knees, ankles; osteo-arthritis of spine, knees and elbow; knees swollen and tender; pain, swelling and tenderness in joints, especially dorsal and lumbar spine; pain in chest on exertion; arteriosclerosis with angina; slowly progressive. (Tr. 102 through 106 and 111 through 115.)

Dr Hayne in his letter of December 30, 1960 (Tr. 148) states:

"The patient's complaints of severe pain, shortness of breath, etc. commenced and continued for several years at a time when there were no benefits or compensation of any type in sight for him. My best judgment based upon frequent observations of the patient especially during the early years of his troubles is that he has a very real disability".

Based upon the evidence and in the light of judicial interpretations of the Act, it is concluded that the findings of the Referee are not supported by substantial evidence, but on the contrary the plaintiff's claims of disability are so supported. It is further found that the conclusion of the defendant that the plaintiff is not entitled to the claimed period of disability and to disability insurance benefits is clearly erroneous, incorrect and should be reversed; and that judgment for the plaintiff should be entered.

It is so ordered.