Neta Belle CROUCH, Plaintiff,

v.

Abraham RIBICOFF, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 3078.

United States District Court
W. D. South Carolina,
Greenwood Division.

June 1, 1962.

Marvin R. Watson, Greenwood, S. C., for plaintiff.

John C. Williams, U. S. Atty., Charles Porter, Asst. U. S. Atty., Greenville, S. C., for defendant.

WYCHE, Chief Judge.

This is an action to review a final decision of the Secretary of Health, Education and Welfare, in accordance with § 205(g) of the Social Security Act (42 U.S.C.A. § 405(g)), denying the plaintiff the period of disability and disability insurance benefits for which she applied.

The plaintiff filed application to establish a period of disability and for disability insurance benefits on June 6, 1957. A hearing was held before a Hearing Examiner of the Social Security Administration, who rendered his decision on June 12, 1959, finding that the plaintiff's combined impairments were not of sufficient severity to prevent her from engaging in any substantial gainful activity at any time prior to June 6, 1957, the date of the filing of her application which was before him. A request for review of this adverse decision was denied by the Appeals Council on September 16, 1959, and no court action followed.

The decision of June 12, 1959, of the Hearing Examiner became res judicata and is binding upon the plaintiff with respect to "disability" on or prior to June 6, 1957.

On June 6, 1960, the plaintiff filed application to establish a period of disability and for disability insurance benefits under the Social Security Act, alleging that she became disabled to work in August, 1955. On July 22, 1960, she was notified by the Bureau of Old-Age and Survivors Insurance that her application was denied. A request for reconsideration was filed September 16, 1960, and by a reconsidered determination dated December 22, 1960, which incorporated plaintiff's application filed September 16, 1960, the Bureau affirmed its original denial and plaintiff was so notified by letter dated January 10, 1961. The case was then heard by a Hearing Examiner who found that the plaintiff met the applicable earnings requirements as of June 6, 1957, the beginning date of the period under consideration, and continued to meet such requirements through the calendar quarter ending September 30, 1960; that plaintiff's combined impairments were not severe enough to make her unable to engage in *any* kind of substantial gainful work starting as of June 6, 1957, the date of filing her first application, or at any time on or before September 30, 1960, the date the special earnings requirements were last met, and continuing. The Appeals Council denied plaintiff's request for review.

In August, 1955, the plaintiff received an injury to her back and hip when she fell while at work in the mill. She returned to work following the accident but was unable to continue because of the pain she was suffering. She was hospitalized for approximately three weeks in September, 1955, and was fitted with a surgical corset which she has continued to wear. Ten days later she had exacerbation of symptoms and was hospitalized again for a short period. Because of continued disability and difficulty she was admitted again to the hospital and on February 11, 1956, had laminectomy of the 3rd, 4th and 5th innerspaces with removal of disc at L–5 and spinal fusion between L–4 and S–1. She has continued to have pain in her back and leg and has been unable to return to work. She has

been in the hospital five times since 1957, twice on account of her back. Before the accident in 1955, she had no prior history of back trouble.

On June 10, 1957, Dr. James A. Mc-Quown, an Orthopedic Surgeon, who operated on the plaintiff in 1956, stated " * * * Subsequent to this patient's operation she has had some improvement. * * * further investigations and subsequent X-Rays revealed a pseudoarthrosis probably between L–4 & 5 and possibly between L–5 & S–1."

Dr. Darby Pendergrass, plaintiff's personal physician, in a report dated June 24, 1957, stated: " * * * she has still had some residual sciatic pain and the X-Rays revealed an inadequate fusion of the back. * * * X-ray report Reveal a pseudoarthrosis probably between L–4 and 5. And possibly between L–5 and S–1. * * * her blood pressure is elevated to 180 over 110."

In another report of Dr. McQuown dated June 2, 1958, it is stated: " * * * x-rays of lumbar spine with pseudoarthrosis L 4–L 5".

In an undated report Dr. McQuown states: " * * * Muscle spasm, limitation of motion spine. Pseudoarthrosis lumbosacral spine. * * * This patient has loss of motion in the lumbosacral area occasioned by fibrous fusion with boney pseudoarthrosis between L–4 & 5 and possibly between 5 & S–1."

Dr. McQuown states in his report dated May 30, 1960: "Localized narrowing L–4 & 5 L–5 S–1 with pseudoarthrosis and traumatic arthritis. * * * The reflexes in knees are active on the left, somewhat hypoactive on the right. Ankle jerks are present and active. She has no atrophy in her thighs or calves, * * *."

Dr. McQuown's report of October 5, 1960, states: " * * * This patient stands 63″ tall and weighs 193¼ lbs. * * * She has a severe degree of lumbar lordosis and moderate degree of dorsal kyphos. * * * Right knee jerks are present as are ankle jerks but they are both hypoactive about 1 plus. * * * Right calf measures 16″ and the left the same, there is no evidence of any atrophy. * * * Anterior superior spine to internal malleolus measures equal. * * *

"Radiographic examination on this date shows severe narrowing at the L–5 S–1 innerspace with severe degree of lumbar lordosis and a pseudoarthrosis between L–4 & 5 and L–5 S–1."

Dr. McQuown in his report of May 30, 1960, says that plaintiff has "Postoperative back pain with pseudoarthrosis postlaminectomy syndrome" and that plaintiff is restricted from "any prolonged standing or lifting"; and in his report of October 5, 1960, he says that "This patient has been a textile worker, has pseudoarthrosis and a painful back with occasional nerve root discomfort. It is my opinion that she is certainly disabled, that she has about a 40% total body disability. She is currently over weight and this needs to be corrected. I have advised her that if she feels she would like to return to work it will be necessary to make another attempt at spinal fusion. There would be no guarantee that it would be any more successful than the first attempt."

For the past two years the plaintiff states that she has had increasing discomfort and pain. She has severe right leg discomfort, pain in the right buttocks and hip, radiating posterior thigh into the posterior calf; she has spent several weeks in bed during the past two years because of severe low back pain. She is able to do some of her cooking and make some of the beds and wash dishes but is unable to do the sweeping or mopping of any of the heavy house work. She has continuous pain in her low back, some days it is worse than others; her leg pain has been somewhat intermittent. She has been unable to bend and is extremely uncomfortable sitting. She has had numbness in both lower extremities but more severe on the right side. Coughing and sneezing cause severe discomfort in her low back.

Dr. McQuown stated in his report of June 10, 1957, " * * * she still had leg pain primarily in the calf and her back

pain has remained a constant problem. * * * At the present time she has considerable limitation of motion in forward bending and has some minimal persistent pain with straight leg raise with persistent anesthesia lateral aspect of the leg. * * * "

In Dr. McQuown's report dated May 30, 1960, he states: " * * * This patient is able to walk on her toes and heels, she bends forward approximately 65 degrees insofar as lumbar-motion is concerned. She tends to reverse her curve. Right and left lateral bending possible about 35 degrees. In the sitting position she has no marked pain with straight leg raise except on the right where her pain radiates posterior thigh. * * * she has some diminution of appreciation of vibratory sensation over the right lateral malleolus, she has some minimal subjective loss of sensation right lateral leg and over the area of the right lateral malleolus and foot. She is able to come from supine to sitting position and to sit erect with hips and knees extended."

Dr. McQuown states in his report of October 5, 1960: " * * * She is able to walk well on toes and heels. * * * She bends forward approximately 35 degrees and does not reverse her curve, right and left lateral bending are possible to about 35 degrees and she is extremely tender at the L–5 S–1 junction. She has tenderness over the crest of the right ilium in the region of the scar. * * * She has severe pain with straight leg raise on the right in the sitting position and this is referred primarily to the posterior thigh area. * * * She has fairly normal vibratory sensation. She has some suggestive numbness in the lateral aspect of the leg and foot. * * * In the supine position right straight leg raise is extremely uncomfortable at 45 degrees and this is relieved by knee flexion. Flexion of the hips on the trunk produces rather severe low back discomfort, abduction of the right hip also produces low back discomfort. She is unable to come to the sitting position or to sit erect with hips and knees extended."

Plaintiff lives with her husband in a four-room house. Her husband and their two married daughters and a neighbor help with the housekeeping. Plaintiff's husband helps her dress and put on the back-brace which she has had to wear since her injury. Plaintiff sleeps on an orthopedic mattress.

Plaintiff's husband testified that his wife's back condition has gotten worse since 1957; that she takes more medicine; that she stays in bed more; that in the last thirteen months when the plaintiff gets sick (she has been in the hospital five times within the last thirteen months, twice on account of her back) she could not be moved but had to be taken to the emergency room in the hospital in an ambulance; she has to take medicine for pain.

A neighbor who lives directly across the street from the plaintiff, testified that she sees the plaintiff "about every day"; that when she sees the plaintiff she is usually lying on the couch in the living room or sitting on the front porch; that she is sick a lot; complains about her back and legs hurting her; that she has carried her to the hospital about three different times; that she helps her with her housework in any way that she can, especially in lifting things for her.

Plaintiff completed a fifth grade education and started to work in the textile mills at the age of fourteen, working continuously in the mill after she was sixteen, except for leaves of absence for the birth of her children, until August, 1955. She was a weaver in the mill. Plaintiff was born February 14, 1918.

█ The District Court is bound by the decision of the Examiner only if his findings and inferences were based upon substantial evidence and the law was properly applied by him.

█ It is well-settled, needing no citation here, that findings of law are not binding on this Court, and where the law has been misapplied, this Court may properly correct the errors below.

█ The statute must be administered with much informality, and satisfaction

of claimant's statutory burden is to be judged in a practical way. Butler v. Flemming, (CA5) 288 F.2d 591 (1961).

■ The four elements of proof to be considered in making a finding of plaintiff's ability or inability to engage in any substantial gainful activity, as laid down in the recent case of Underwood v. Ribicoff, (CA4) 298 F.2d 850 (1962), are as follows: "(1) the objective medical facts, which are the clinical findings of treating or examining physicians divorced from their expert judgments or opinion as to the significance of these clinical findings, (2) the diagnoses, and expert medical opinions of the treating and examining physicians on subsidiary questions of fact, (3) the subjective evidence of pain and disability testified to by Claimant, and corroborated by his wife and his neighbors, (4) Claimant's educational background, work history, and present age."

■ The medical testimony in this case is unimpeached. Considering the record as a whole, it is my opinion that the foregoing objective medical facts, the diagnoses, and medical opinions of the treating and examining physicians, the subjective evidence of pain and disability testified to by the plaintiff, and corroborated by her husband and neighbor, and plaintiff's educational background, work history, and present age in this case, establish that the plaintiff is unable to engage in any kind of substantial gainful work. It is undisputed that plaintiff has a limited educational background and a record of steady employment up until the time of her injury in 1955.

The doctors have not advised the plaintiff that if she would lose weight she would be well; or that an operation would make her well, only that to lose weight would make her more comfortable, and that an operation might help her but that "there would be no guarantee that it would be any more successful than the first attempt."

Dr. McQuown has given as his opinion that the plaintiff is "certainly disabled" and that her activity should be restricted from "any prolonged standing or lifting".

In construing the Act the Court of Appeals of the Fifth Circuit in the case of Butler v. Flemming (CA5) 288 F.2d 591, (1961) (cited as authority in the case of Underwood v. Ribicoff, (CA4), 298 F.2d 850 (1962)), decided that the test of eligibility for disability freeze under the Social Security Act must include a consideration of claimant's background, experience, training, education, physical and mental capabilities, kinds and types of employment formerly followed and no longer open to him, the absence of any indication of any specific work less exacting within his residual competency and reasonably available as a prospective source of employment in the general area where he lives.

Chief Judge Biggs in the Third Circuit, designated to sit in the District Court in the case of Klimaszewski v. Flemming, (D.C.E.D.Pa., 1959) 176 F.Supp. 927, 932, stated that: "The word 'any' must be read in the light of what is reasonably possible, not what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

The Court of Appeals of the Eighth Circuit in the cases of Ribicoff v. Hughes, 295 F.2d 833 (CA8, 1961), and Kohrs v. Flemming, 272 F.2d 731 (CA8, 1959), followed the interpretation of the Act by Chief Judge Biggs of the Third Circuit.

The Court of Appeals of the Second Circuit in the case of Kerner v. Flemming, 283 F.2d 916, 921, held, after reviewing the record, that there was no substantial evidence that would enable the Secretary to make any reasoned determination whether applicant was "unable to engage in substantial and gainful activity" and said: "Such a determination requires resolution of two issues—

what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available."

In construing the Act, the Sixth Circuit, in an opinion by the late able and distinguished Circuit Judge John D. Martin, Sr., in the case of Roberson v. Ribicoff (CA6) 299 F.2d 761 (1962), pointed out that the Sixth Circuit had followed the standards laid down in the case of Kerner v. Flemming, supra. See, Hall v. Flemming, 289 F.2d 290 (CA6, 1961); King v. Flemming, 289 F.2d 808 (CA6, 1961).

The Seventh Circuit in the case of Teeter v. Flemming, 270 F.2d 871 (CA7, 1959) said: "The Social Security statute does not require applicant to be completely helpless, but to be unable to engage in substantial and gainful activity (commensurate with his age, educational attainments, training experience, mental and physical capacities) by reason of a medically determinable physical or mental impairment."

As I demonstrated in the case of Snelling v. Ribicoff, (D.C.E.D.S.C.) 198 F. Supp. 432 (1961), the vast majority of the United States District Courts have also agreed that the foregoing tests and standards should be applied in the interpretation of the Social Security Act. See also, Corbin v. Ribicoff, (D.C.W.D.S.C.) 204 F.Supp. 65.

In my opinion the administrative decision in this case does not measure up to the adopted standards and tests of the Court of Appeals of the Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Circuits, nor is it in agreement with the tests and standards prescribed by the great majority of the United States District Courts.

My review of the entire record convinces me that the plaintiff's earning capacity and capabilities in engaging in any substantial gainful activity are negligible if not non-existent.

For the foregoing reasons, it is my opinion that there was no substantial evidence in the Record to support a final determination by the Secretary of Health, Education and Welfare that the plaintiff has failed to establish satisfactorily her inability to engage in "any substantial gainful activity" within the meaning of Sections 216(i) and 223 of the Social Security Act, 42 U.S.C.A. §§ 416(i), 423, and, therefore, that plaintiff was not entitled to a period of disability or disability insurance under the Act. The decision of the Secretary is, therefore, reversed, and

It Is Ordered, That the decision of the Secretary in this case be and the same is hereby reversed, with direction that judgment be entered for the plaintiff.