Arthur S. ADAMS

v.

Arthur FLEMMING, Secretary of Health, Education and Welfare.

Civ. A. No. 2641.

United States District Court
D. Vermont.

June 15, 1959.

---

Arthur S. Adams, pro se.

Thomas W. Lynch, Asst. U. S. Atty., Rutland, Vt., for defendant.

GIBSON, District Judge.

### Jurisdiction

This is a civil action for judicial review of the Social Security Administration's determination that the plaintiff is not entitled to a period of disability or disability insurance benefits as provided for in Sections 416(i) and 423(c) (2), 42 U.S.C.A. This action was brought pursuant to Section 405(g) of Title 42 of U.S.C.A. The plaintiff seeks summary judgment pursuant to Rule 56 (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., on grounds that there are no genuine issues as to any material fact and that he is entitled to judgment as a matter of law. The defendant has cross-moved for the same relief.

### Statement of the Case

Arthur S. Adams, the plaintiff in this action, is a resident of Middlebury, Vermont. On January 3, 1957, Mr. Adams filed an application with the Bureau of Old-Age and Survivors Insurance of the Social Security Administration to establish a "period of disability" under § 416 (i) of the Social Security Act. He also filed on that date an application for "disability insurance benefits" under § 423 of the Act. (Section references herein refer to United States Code Annotated.) Section 416(i) is designed to protect a wage earner's old age and survivors insurance rights against impairment of his earning capacity through a "disability". This period of protection against loss of rights is frequently referred to as a "disability freeze". Section 423 provides for monthly payments to an individual having a "disability" where such disability has been incurred between the ages 50 and 65.

On December 27, 1957, Mr. Adams was notified by the District Office (Burlington, Vermont) of the Social Security Administration that his application had been denied on the ground that he was not under a "disability" as defined by the law. On March 11, 1958, the plaintiff, disagreeing with the determination, filed a request for hearing on his claim, waiving his right to appear and give further evidence. A hearing was held before Jackson C. Smith, Referee. Plaintiff, by choice, was without benefit of counsel. On April 29, 1958, Referee Smith published his findings in which he denied plaintiff's claim on the ground that he was not "under a disability within the meaning of the Act."

On June 12, 1958, the plaintiff requested of the Social Security Administration Appeals Council a review of the Referee's decision. The decision of the Appeals Council was rendered on October 17, 1958, affirming the Referee's decision dated April 29, 1958, and expressly adopting all inferences, findings, and conclusions of the Referee. The instant action was commenced on November 14, 1958.

The undisputed evidence reveals that the petitioner went to work for the Insurance Company of North America in New York in 1918 at the age of 18 years. He worked steadily for this Company for 28 years. On April 30, 1946, the Company reluctantly retired him because of his physical condition. The Company, in retiring the petitioner, relied not only on petitioner's judgment of his physical condition but also on the opinion of Dr. William J. Clemens, medical consultant to the Company's New York office. The Company decided at that time that petitioner was not physically able to continue to render service. Further, on January 16, 1958, it notified him that because of his medical history he would

not be employable by the Company in any capacity.

The sundry letters and documents considered by the Referee disclose that the sinus ailment of the plaintiff was not ordinary or minor in nature. The Referee quotes the following excerpt from an affidavit of plaintiff:

"Trouble stemmed from a fractured and bent nose bone which completely sealed off one of the nostrils, forming what doctors termed a 'horn' behind which it proved impossible to dislodge chronic sinus infection once it set in. Throat and ears became infected. Tonsils were removed in General Hospital Norwalk, Conn., and the ears operated on at my home in Westport, Conn. Question of operation on the nose itself became grave. Doctor Teuscher of Westport opposed it altogether on principal. Doctor Moorehead of Brooklyn felt the injured bone lay too far back in the head to permit surgery without undue risk. However Doctor Limbach of New York, and Doctor Pearlman, the well known plastic surgeon also of New York recommended operation, as did the Company physician, Doctor Clemens."

At the time of Adams' enforced retirement, his annual salary was $9,000 and his position was that of Manager of the Marine Service Department and Inland Claims. At that time he had 24 employees under his supervision. Since his enforced retirement, to date the Insurance Company has paid him $3,000 per annum as a disability allowance, and will continue to pay this amount until 1964, at which time he will be pensioned.

The Internal Revenue Service, on April 3, 1950, found:

"All deductions allowed have been substantiated by records produced for this examination by the taxpayers. The items of Arizona therapy, as well as the Arizona travel costs * * * are allowed on the basis of a signed certified copy of the Taxpayers physician which is attached hereto and made a copy of this report.

*"This examination disclosed that Mr. Adams is still incapacitated and it appears extremely doubtful whether or not he will ever again be able to carry on gainful employment."*

It ruled the $3,000 payment per annum was properly excludable from gross revenue as a disability pension. Plaintiff's medical history may be sketched as follows:

In 1945, Dr. Limbach saw the petitioner four times for his sinus troubles. After his enforced retirement in 1946, petitioner went to Arizona upon the advice of Dr. Limbach. There he was treated by Dr. Mikell, and Dr. Mikell operated on petitioner in February, 1946. During the operation, which was not successful, petitioner nearly died from shock. The operation was terminated before it could be completed, and petitioner finally recovered from its effects.

Petitioner then returned East in 1946. Since then he has done nothing save light work around his home in Middlebury, Vermont, and taken short walks.

It appears that in 1946 petitioner was treated by a Dr. Gatewood of the Polyclinic Hospital in New York City. Unfortunately, it seems that Dr. Gatewood's comments are unavailable inasmuch as he has retired, being advanced in years, and is unable to recall the circumstances from memory.

Around 1952 or 1953, he was treated by Dr. Schell of the Massachusetts Eye & Ear Infirmary, Massachusetts General Hospital. And, finally, petitioner placed himself under the care of Dr. R. H. Woodard in March of 1956 and has remained in Dr. Woodard's care since. Dr. Woodard's letter of September 17, 1958, summarizes the severity of petitioner's affliction. Even the use of various medications fails to afford petitioner complete relief. Dr. Woodard's letter reads as follows:

"This is to certify that Mr. Adams has been under my care since March 1956. His *principle* complaint has been difficulty smelling, nasal stuffiness and discharge, usually mucopurulent, sometimes bloody, and intermittent pains in the maxillary and frontal sinus region.

"Apparently similar symptoms have been present for 15 years and have been treated rather rigorously. Perhaps the treatment was too rigorous, particularly in the form of surgery in 1946 following which there was a long period of more severe symptoms.

"On examination there is a large perforation of the anterior septum with somewhat ragged edges and scabby purulent attachments if there happens to be a flare-up at the moment. Nasal mucosa is either inordinately dry or if there is a respiratory infection, has a purulent +/— exudate. Sinuses become tender with a cold and transillumination varies but even during remissions they have never been completely clear.

"Treatment with antihistamines and nasal decongesterants keeps symptoms to a minimum during acute exacerbations although there never seem to be complete relief.

"Diagnosis: chronic sinusitis and rhinitis."

### Conclusions of Law

 The findings of the Social Security Agency are final and binding if there is a substantial basis for them. Such finality extends to inferences and conclusions drawn from the evidence. Irvin v. Hobby, D.C.Iowa 1955, 131 F. Supp. 851. The decision of the Appeals Council of the Social Security Administration affirming the Referee's decision that applicant was not entitled to benefits was a "final decision of the Secretary" within the meaning of 42 U.S. C.A. § 405(g) entitling the claimant to judicial review. Livingstone v. Folsom, 3 Cir., 1956, 234 F.2d 75.

In this case the sole issues are whether the plaintiff, Mr. Adams, is under a "disability" as defined in the Act, and whether there is substantial evidence to support the Referee's determination. A disability is defined in 42 U.S.C.A. § 423(c) (2) as meaning "inability to engage in any substantial gainful activity *by reason of any medically determinable physical or mental impairment* which can be expected to result in death or to be of long-continued and indefinite duration". (Emphasis added.) The statutory definition is the same in 42 U.S.C.A. § 416 (i) (1), with minor variation.

██ While it may well be that there is substantial evidence to support the Referee's finding that the plaintiff's impairment was not "totally disabling", assuming "total disability" to be the test, and assuming "totally disabling" means one must be bedridden, completely paralyzed, or unable to lift a finger, it is apparent to me that in this mixed question of fact and law the Referee has incorrectly construed the law. It was never intended that a person be so totally disabled to qualify for these benefits. It is well settled, needing no citation here, that such findings of law are not binding on this Court, and where the law has been misapplied, this Court may properly correct the errors below.

 The plaintiff's alleged ailment seems well founded and corroborated by the reports of various doctors who have examined him over a period of years up to 1957. In my view, accepting the undisputed evidence introduced by petitioner as proven fact, the claimant has clearly established a right to relief under the Social Security Act. There is no attack on the credibility of his affidavits and letters. Further, though the Referee is quite correct in stating that he is not bound by the determination of the claimant's employer that the claimant is unable to work and is entitled to disability payments, such evidence of disability cannot be blithely dismissed when there is no evidence in the record in contradiction of the employer's determination. One presumes that an employer will not

lightly dismiss an employee of long service (28 years) without cause. The cause for retirement here is founded on a medical examination made by a doctor engaged by the claimant's employer. In the absence of collusion between the employer and employee, this determination —though it may not be controlling as to the Referee's determination, is deserving of great weight in evidence. Jacobson v. Folsom, D.C., 158 F.Supp. 281, 287. Viewing the whole record before the Referee, and his findings, I cannot say that the ruling against the claimant, Mr. Adams, is based on substantial evidence, unless, as seems to have been the case, the concept of "total disability" is that heretofore mentioned, and in my concept is completely erroneous.

■ Further, undue emphasis is placed upon certain negative findings of the Referee. In the decision of the Referee it is stated that: "At no time has the claimant alleged any severe and persistent headaches in connection with his sinus condition and apparently in spite of the condition of the nasal septum sufficient respiratory function has remained." While it is true that there are no express statements made indicating the existence of such headaches, all evidence before the Referee, considering the severity of the claimant's sinus affliction, could only sustain a contrary inference. As Judge Kaufman stated when faced with a similar situation: "Such a lay observation as was made by the referee can only have been based on surmise and speculation and is certainly of insufficient probative value to derogate from plaintiff's (case) supported by medical records." Jacobson v. Folsom, supra, at page 285. It is common knowledge, at least in Vermont, that even in most minor cases of sinus ailments there is an accompanying headache that can be most distressing, and the claimant here has considerably more than the usual sinus troubles. Certainly, though the burden is for the most part on the claimant, the Referee has some duty to explore for himself the merits of the claim. Jacobson v. Folsom, supra, at page 288.

The really substantial error in the Referee's decision is, however, to be found in the application of the law to the fact. The difficulty arises in defining the term "disability". Is the claimant under a disability as the law defines it? The claimant is, in all other respects, entitled to Social Security benefits. This is admitted by the Government. Thus the term "disability" must be closely examined in the light of Congressional intent and interpretive case law, and then applied to the facts of this case.

■ The Referee finds that Mr. Adams' impairment and resulting limitation of activities seems to fall far below that level of severity of an impairment contemplated in the Act as being *totally disabling*. Although the Referee does further assert that the impairment is not "of such severity as would prevent him from engaging in any substantial gainful activity", it appears that the phrase "inability to engage in any substantial gainful activity" and the term "total disability" are used synonymously, and incorrectly so. A "total disability" requirement is nowhere referred to in the Act itself. The test in the Act is "inability to engage in any substantial gainful activity". This, of course, must be "medically determinable". A total disability requirement contradicts the Act itself which is governing in these cases. The Referee seems to be primarily relying on comments entitled "Congressional Intent on Severity of Disability" appended to his findings and decision. While it is true that certain of the quoted passages seem to sustain the Referee's conclusions, the quoted portions of Senate Report No. 1987 are not in context and are, I feel, misleading. To strictly read these comments into the statutes here pertinent without considering the entire legislative and judicial picture to date, would so restrict the application of the relief provisions as to render them meaningless. That such a state has occurred is apparent in the hearings before the Committee on Ways and Means, House of Representatives, 85th Cong., 2d Sess. To cite only one of

several examples, Representative Carl D. Perkins of Kentucky remarks, Page 1035 of the cited hearings: "Mr. Chairman, I entirely agree with your statement to Mr. Folsom, that a great many people are concerned with the rigid standards which are used (by the agency) in determining disability and in the slowness of the disability determinations."

The general tenor of comment indicates that the spirit of the enactment in regard to disability provisions has been frequently ignored or misapplied in the past by the agency. As I have pointed out, the Act itself, § 416(i) and § 423 (c) (2), does not have in it the requirement that a person be totally disabled or that the individual be disabled not only for his usual work but also for any type of substantial gainful activity. Substantial gainful activity must be continuous. If not, if it is merely sporadic and one cannot work regularly at any substantial gainful occupation, he is disabled within the meaning of the Act. The fact is there is abundant confusion, both in the legislative branch and judicial branch, over the wording of the Act, and there are many apparent contradictions in defining disability and substantial gainful activity—so much so that it is not useful to cite and trace the comments made both before and after the enactment of these disability provisions. The Act itself is sufficiently clear to this Court. The difficulty is apparent in the statements of Robert J. Myers, Chief Actuary, Social Security Administration, under questioning by the Chairman, Senator Harry F. Byrd, Committee on Finance, U. S. Senate. Hearings before the Committee on Finance, U. S. Senate, 84th Cong., 2d Sess. on H. R. 7225—the Social Security Amendments. The Social Security Administration, in an effort to answer some of Senator Byrd's questions, submitted a statement setting forth their stand on the disability freeze provisions. See Page 43 of the hearings. Therein the Department acknowledged that the concept of "substantial gainful activity" is a growing one which must be treated in each instance on the facts.

The Department states on Page 43 of the hearings: "Substantial gainful activity means the performance of substantial services with reasonable regularity in some competitive employment or self-employment. It relates to the range of activities the individual can perform * * * complete helplessness is not necessary to a finding of an allowable disability. Sporadic or infrequent activity would not necessarily establish ability to engage in substantial gainful activity." Mr. Myers states that the definition of disability and the framework for carrying out the program under § 423 of the Act is substantially the same as it has been under § 416.

These pronouncements of the Department are evidence to this Court that the Department, too, does not contemplate total disability to be the test. It is also clear that it was intended that such factors as the claimant's work experience, age, and education be considered in making the determination of whether the claimant is able to engage in substantial gainful activity. There is no indication in the Referee's findings that these age and experience facts were considered. Further, there is no mention as to whether there is or is not a causal connection between the impairment of claimant and his existing unemployment. One can conclude that the Referee thought there was no connection, though the only evidence (letter from Insurance Company) in the record sustains such a causal connection.

The Court recognizes that the burden of sustaining the claim for benefits is on the claimant. However, this Court cannot sustain the Referee's decision unless it is based on substantial evidence. As stated in Jacobson v. Folsom, supra, 158 F.Supp. at page 286, "even assuming that plaintiff was physically capable of engaging in clerical work it does not necessarily follow that he was able 'to engage in any substantial gainful activity.' Implicit in this criterion is that the gainful work be commensurate with plaintiff's educational attainments, his training and experience." These are

matters that the Referee does not seem to have explored in this case. It may well be, in fact most probable, that Mr. Adams, at his age and in his condition, will be unable to gain such employment.

Title 42 U.S.C.A. § 405(g) provides:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

 This Court is unable to find the decision of the Secretary in conformance with the Act as it defines the term "disability"; to wit, "inability to engage in any substantial gainful activity *by reason of any medically determinable physical or mental impairment* which can be expected to result in death or to be of *long-continued and indefinite duration*". (Emphasis added.) I find the evidence, as a matter of law, sufficient to sustain a finding of disability in favor of the claimant.

Lastly, this Court's attention is directed to the Government's comments in their brief, Page 7, Motion for Summary Judgment. Therein the following is found:

"The wonder of this whole matter is that plaintiff's ex-employers, the Insurance Company of North America, were willing to place him on the disabled list at age 46 on the basis of such minimal impairments as he has. We do not need to speculate as to the reasons for their action, as it does not affect the Department's view of the case, but it would seem very likely that, being well acquainted with plaintiff's neurotic tendencies after 28 years, they could see what a nuisance he would become with his 'perforated septum'."

A thorough search of the entire record fails to reveal even the slightest evidence to support such an allegation as is therein made by the Government. Whereas it states there is "no need to speculate", it appears it has done just that. The absence of objectivity by the Department in such a case is wholly unwarranted, and in the opinion of this Court is unprofessional, almost unethical. Mr. Adams appeared personally before this Court and argued his own appeal. The brief charges Mr. Adams with "neurotic tendencies". Such allegations made by some bureaucrat who undoubtedly never has seen Mr. Adams is dangerous to our system of justice and is, to say the least, un-American.

### Judgment Order

For the foregoing reasons, the decision of the Secretary is reversed. The Secretary is directed to take such action as will provide the claimant the benefits to which he is entitled in conformance with this opinion.

Decision reversed.