Dalphus W. PRUITT, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 2271.

United States District Court
S. D. West Virginia.

March 21, 1960.

Clay S. Crouse, Beckley, W. Va., for plaintiff.

Percy H. Brown, Asst. U. S. Atty., Charleston, W. Va., Philip T. Brown, Sp. Counsel, Charlottesville, Va., for defendant.

FIELD, Chief Judge.

This is a civil action for judicial review of a determination by the Secretary of Health, Education, and Welfare that the plaintiff is not entitled to a period of disability or disability insurance benefits as provided for in Sections 216(i) and 223(c) of the Social Security Act, as amended, 42 U.S.C.A. §§ 416(i) and 423 (c). This action for review was brought pursuant to Section 205(g) of the Act, 42 U.S.C.A. § 405(g), and, after the filing of the defendant's answer together with the certified copy of the transcript of the record of the administrative proceedings, defendant moved for a summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. No affidavits having been filed by either party, the issue to be decided will be considered on the basis of the pleadings and the transcript of the administrative proceedings.

The plaintiff, on October 9, 1956, filed his application to establish a period of disability beginning with February 27, 1952. His specially insured status as provided in Section 216(i), 42 U.S.C.A. § 416(i), terminated on September 30, 1954. Therefore, it was incumbent upon

the plaintiff to establish that his disability as defined by the Act came into existence at sometime between February 27, 1952 and September 30, 1954. Section 216(i) is designed to protect a wage earner's old age and survivors insurance rights against impairment of his earning capacity through total disability before reaching retirement age. This part of the protection against loss of rights is frequently referred to as a "disability freeze." Section 223 provides for monthly payments to an individual having a "disability" where such disability has come into existence between the ages of 50 and 65.

After the plaintiff filed his application, the Bureau of Old Age and Survivors Insurance of the Social Security Administration disallowed the application on July 9, 1957, on the ground that the impairment of the plaintiff at the time of eligibility was not of sufficient severity to prevent him from engaging in any substantial gainful activity as provided under the Act. Following that, upon plaintiff's request, a hearing was held before a referee of the Social Security Administration in Beckley, West Virginia, on September 24, 1958. At that time the plaintiff was represented by counsel and testified before the referee. In addition to such testimony a number of medical reports and certain other documentary evidence were presented. Thereafter, under date of November 20, 1958, the referee filed a written decision in which he found that based upon all the evidence in the record the plaintiff was not under a disability within the meaning of Section 216(i) of the Social Security Act as amended, and that he was not entitled to have a period of disability established for him under the provisions of the Act. Thereafter, an appeal was taken to the Appeals Council of the Social Security Administration, and, on June 18, 1959, the Council denied the request for a review. After this denial of review, the present action was instituted.

■ Under Section 205(g) of the Act, the findings of the Secretary as to any facts, if supported by substantial evidence, are made conclusive on the courts and a hearing de novo may not be had on the evidence. Walker v. Altmeyer, 2 Cir., 137 F.2d 531. Ferenz v. Folsom, 3 Cir., 237 F.2d 46. Hobby v. Hodges, 10 Cir., 215 F.2d 754. However, in the review of any administrative decision it was never intended that the courts should surrender their "conventional judicial function." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 466, 95 L.Ed. 456. While the statutory finality of the administrative findings necessarily extends to reasonable inferences and conclusions drawn from the evidence, nevertheless if it is apparent that the administrative decision is based upon conclusions which were not reasonably reached or which resulted from improper conclusions of law which were unsupported by the evidence, the court may and should correct those errors. Goldman v. Folsom, 3 Cir., 246 F.2d 776. Jacobson v. Folsom, D.C., 158 F.Supp. 281. Adams v. Flemming, D.C., 173 F.Supp. 873. With these principles in mind, I would like to review the evidence as it appears in the transcript of this case.

■ The plaintiff, who was 57 years of age at the time of the hearing, was born on December 6, 1901, in the State of Tennessee. While he can read and write, his formal education ended somewhere about the fourth grade when he was 14 years of age. He has lived in West Virginia for the past 38 years and his principal lifework has been in and around the coal mines of West Virginia. He was married in 1923 and he and his wife live in a four-room house on eleven acres of ground which they purchased about fourteen years ago.

From 1946 until February 22, 1952, the plaintiff was employed as a truckdriver to haul slate from the mines. On the latter date, his truck overturned and the plaintiff received an injury which he termed a "broken neck" but which more particularly involved fractures and displacement of some of the cervical vertebrae. One of the doctors diagnosed the plaintiff's condition as arthritis of the

cervical spine, secondary to fracture and trauma and fibrositis of the muscles of the neck also secondary to fracture and trauma. This doctor also indicated that there was a marked limitation of the movement of the neck accompanied by muscle spasms. Another doctor's report indicates a complete loss of motion in the cervical spine in all directions with attendant limitation of motion in the arms to some degree. In one report, this latter doctor, M. M. Ralsten of Beckley, West Virginia, stated that the plaintiff has a marked degree of disability due to the injury to the cervical spine and that "he could work at very select and suitable jobs." In a later report, Dr. Ralsten described the plaintiff's condition with considerable particularity and indicated that in his opinion the "degenerative changes" of the cervical and lumbar spine with a fibrous ankylosis which is irreversible had resulted in the total inability of the plaintiff to perform any work. Dr. Doff D. Daniel filed a report in which he stated that the plaintiff had been disabled from following any gainful occupation since February 22, 1952, and could do nothing that required manual exertion. It is interesting to note that the referee in his decision stated that Dr. Ralsten's opinion that the plaintiff was totally unable to perform any work was not supported by any medical findings, and, thereafter, in a letter directed to the Social Security Administration under date of January 2, 1959, Dr. Ralsten further elaborated·upon his medical findings and stated it was his opinion that the disability referred to had continued from the date of the plaintiff's injury of February, 1952.

In this case, the sole issue is whether the plaintiff became unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration. From the record made before the referee and the documents filed therein unquestionably the plaintiff's condition satisfies the requirement of permanency as

contained in the statute. The remaining question is whether this permanent disability was sufficient in its nature to prevent the plaintiff from engaging in any substantial gainful activity. It would certainly appear that the plaintiff's condition or impairment was medically determinable and it was the opinion of those doctors whose reports indicated a thorough consideration of his case that he was totally and permanently disabled. While I agree with the referee that it is outside the province of the doctors to attempt to resolve the issue of disability by stating their conclusions, nevertheless the medical findings and opinions based thereon as to the resultant limitation of the plaintiff's activities is not only proper but vital to the issue. Here the doctors have indicated that plaintiff has been unable to perform manual labor since his injury in 1952. There is no evidence in contradiction of this medical testimony nor any attack upon the credibility of the doctors so testifying.

The question then would seem to be this. Is a 57-year old man with a fourth grade education who has earned his livelihood for over 40 years by working in and around the coal mines of West Virginia and who sustained an injury which prevents him from ever again performing manual labor "unable to engage in any substantial gainful activity" under the provisions of the Social Security Act? With all deference to the array of administrative findings and cases to the contrary, I think this question must be answered in the affirmative.

■■ It is true that mere inability to follow one's customary occupation, in itself, is not sufficient to establish the requisite total and permanent disability. Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977. On the other hand, neither is it necessary that the plaintiff be bedridden, helpless or that he should abandon every effort to work. See Berry v. United States, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945. Aaron v. Fleming, D.C., 168 F.Supp. 291. The purposes of the Social Security Act being remedial in nature, it should be liber-

ally construed to achieve its purposes. Carqueville v. Folsom, D.C., 170 F.Supp. 777. Willard v. Hobby, D.C., 134 F.Supp. 66. Counsel for the Government contends that it is obvious that the risk insured by Congress under the Social Security Act is the *total lack of capacity* to work. I find no basis in either the legislative history of the Act or in the cases for a statement of such latitude. In Adams v. Flemming, supra [173 F. Supp. 879], Judge Gibson, in making some particularly pertinent observations with respect to the legislative history of the Act and the testimony of representatives of the Social Security Administration, stated as follows:

"The Social Security Administration, * * * submitted a statement setting forth their stand on the disability freeze provisions. See Page 43 of the hearings. Therein the Department acknowledged that the concept of 'substantial gainful activity' is a growing one which must be treated in each instance on the facts. The Department states on Page 43 of the hearings: 'Substantial gainful activity means the performance of substantial services with reasonable regularity in some competitive employment or self-employment. It relates to the range of activities the individual can perform * * * complete helplessness is not necessary to a finding of an allowable disability. Sporadic or infrequent activity would not necessarily establish ability to engage in substantial gainful activity.' "

The regulations of the Social Security Administration apparently give recognition to the factors inherent in this "growing concept of substantial gainful activity." 20 CFR 404.1501, provides in part as follows:

"(b) In determining whether an individual's impairment makes him unable to engage in such activity, primary consideration is given to the severity of his impairment. Consideration is also given to such other factors as the individual's edu-

cation, training and work experience."

In the case of Klimaszewski v. Flemming, D.C., 176 F.Supp. 927, 931, Chief Judge Biggs of the Third Circuit stated his clearcut analysis of the statutory language as follows:

"The Secretary lays stress on the adjective 'any' which precedes the phrase 'substantial gainful activity' and cites to the court legislative history in support of his position. However, the definition of disability cannot be considered *in vacuo*. The definition relates to the individual claimant. '[T]he act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has.' Dunn v. Folsom, D.C., 166 F.Supp. 44, 48.

\* \* \* \* \* \*

"The word 'any' must be read in the light of what is reasonably possible, not of what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

I derive further comfort and confidence in the conclusion I have reached from Judge Chesnut's opinion in Lease v. Fleming, D.C., 178 F.Supp. 169, as well as the Seventh Circuit decision in Teeter v. Flemming, 270 F.2d 871.

Taking into consideration the limited education of the plaintiff, his lack of training in any field other than the coal mining industry and the improbability of successful rehabilitation due to his age, it is my considered opinion that when he lost his capacity for manual labor he likewise lost his ability to en-

gage in any substantial gainful activity. To me such a conclusion is inescapable when the application of the statute to the plaintiff's condition is viewed in the light of what is realistically and reasonably possible rather than merely what is conceivable.

■ The referee, in his decision, placed considerable emphasis on the fact that the plaintiff was employed as a watchman at a sawmill for three months in the year 1953, and for a brief period in 1955 as a weighman at a coal tipple. The work as watchman required little exertion and it appears that the responsibility was shared by plaintiff and his wife during the time they stayed there. The statement of C. A. Bowyer, his employer on the coal weighing job, is in the record to the effect that this assignment required less than one minute per truck and that the aggregate time of actual service in an eight hour day was about fifteen minutes. The performance of such sporadic work of a limited nature is not at all controlling on the question of plaintiff's ability to continuously carry on a gainful occupation. Berry v. United States, supra; United States v. Still, 4 Cir., 120 F.2d 876; Adams v. Flemming supra; Jacobson v. Folsom, supra.

The impact and significance of this evidence is further minimized by the attendant circumstances as shown by the record. The sawmill job was the result of a charitable gesture on the part of the plaintiff's nephew. C. A. Bowyer stated that plaintiff was put on the payroll at the coal operation to enable plaintiff to pay for groceries; that he was so employed at half the union scale and that during the time plaintiff was there he was assisted in his work by the truckers. To my mind, the emphasis placed by the referee on these two instances of employment was, to say the least, most inappropriate.

For these reasons I conclude that the decision of the Secretary is not supported by substantial evidence on the record considered as a whole and that under the authority for review given by 42 U.S.

C.A. § 405(g) the decision must be reversed. The motion of defendant for summary judgment is hereby denied, and the Secretary is directed to take such action as will provide the claimant the relief and benefits to which he is entitled in conformance with this opinion.

Decision reversed.