**Bill THOMPSON, Plaintiff,**

v.

**Abraham RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1183.**

United States District Court
S. D. West Virginia
at Huntington.

June 5, 1962.

Lawrence L. Pauley, Huntington, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action under 42 U.S. C.A. § 405(g) of the Social Security Act to review a final decision of the Secretary of Health, Education and Welfare. Plaintiff seeks to establish a period of disability under 42 U.S.C.A. § 416(i), and the final decision of the Secretary was that plaintiff was not entitled to such a period of disability. The jurisdiction of this court is limited to a determination of whether that decision was based on substantial evidence, 42 U.S.C.A. § 405 (g). The court is precluded from having a hearing de novo. See Carpenter v. Flemming, D.C.N.D.W.Va., 178 F.Supp. 791.

The Act, 42 U.S.C.A. § 416(i) provides for eliminating from a person's earning record the period during which he was under a "disability" in computing his average monthly wage upon which the amount of his benefit is based. A dis-cussion of the elements of this statutory disability is contained in Pruitt v. Flemming, S.D.W.Va., 182 F.Supp. 159. For an individual to be eligible for the establishment of a period of disability, the Act requires him (besides being under a "disability" as defined) to have met the special "insured status" contained therein. With respect to this plaintiff, the special insured status requirement was that he must have had a continuous disability (for not less than six continuous calendar months but still continuing indefinitely at the time he filed his application) which began at a time when he had 6 quarters of coverage (as defined in 42 U.S.C.A. § 413) in the 13 quarter period and 20 quarters of coverage in the 40 quarter period ending with the first quarter of disability. Plaintiff met this quarters of coverage requirement on the date of his application and last met it on June 30, 1961.

On October 3, 1957, plaintiff filed an application to establish a period of disability, alleging that he became unable to work in November, 1955 (at age 46) due to arthritis of the left hip and leg and high blood pressure. The application was denied initially on April 10, 1958, and was denied on reconsideration by the Bureau of Old-Age and Survivors Insurance. On June 30, 1960, plaintiff requested a hearing before a hearing examiner, and such a hearing was held on December 6, 1960. On January 30, 1961, the hearing examiner's decision was that plaintiff was not under a disability as defined in the Act. Plaintiff then re-quested a review by the Appeals Council of the Social Security Administration on March 15, 1961, and on May 1, 1961, the Appeals Council, after receiving additional evidence, declined to review the hearing examiner's decision. That decision thus became the "final decision" of the Secretary of Health, Education and Welfare, subject to the present judicial review.

The issue in this case is whether there is substantial evidence in the record to support the Secretary's decision

that plaintiff, having the burden of proof, failed to establish his right to a period of disability, i. e., failed to show that he was unable to engage in any substantial gainful activity as a direct result of a medically determinable impairment which was expected either to result in death or to be of long-continued and indefinite duration.

At the hearing plaintiff stated that he had had trouble with his left leg since he was a child, but that he had worked in the mines from 1931 to 1955 at which time the mine was worked out. He then held a job as a night watchman at a sawmill during 1956 and up to March 1957. In his application for a period of disability he stated that the pain from his leg forced him to quit the watchman's job since he was not able to "get about" on that job. At the hearing another factor in the termination of his employment was manifested when plaintiff admitted that the sawmill had moved to a new location and that he did not want to follow it.

The medical evidence is conflicting as to the presence and/or severity of arthritis. Though both Drs. Boggs and Duley diagnosed arthritis, Dr. Montgomery found only the possibility of arthritis in 1960 and his prognosis was that the condition was probably not disabling. Dr. Scott, in the same year and on the basis of the only existing X-ray study of plaintiff's condition, found no evidence of arthritis.

All reports agree that plaintiff has had a deformity of the left leg and hip as a result of poliomyelitis when he was ten years of age. The medical evidence here is also conflicting as to the degree of severity of this condition; however, Dr. Scott stated that there was doubt as to whether plaintiff was experiencing pain and he concluded that plaintiff was not disabled from earning a livelihood.

It is clear that, in this atmosphere of conflicting medical evidence, the hearing examiner chose to rely on the conclusions reached by Dr. Scott. Indeed, plaintiff's counsel has conceded that Dr. Scott's report is by far the most comprehensive from a medical standpoint. His examination was the only one conducted with the benefit of an X-ray study of plaintiff's condition. As late as 1960 he reported no evidence of arthritis destruction or other disease and failed to make any diagnosis of high blood pressure. His conclusions as to the severity of plaintiff's leg condition have already been noted. This evidence which the examiner relied on is certainly substantial and his decision may not be disturbed.

Complaint is made in plaintiff's brief as to the conduct of the Hearing Examiner; and it is claimed that defendant has made "false assumptions of fact, not supported by the evidence, and aided by an erroneous conclusion of law." The court has carefully examined each of these claims and finds nothing in the record to support them.

The decision of the Secretary, being based on substantial evidence, is affirmed.