**Alex PAULEY, Plaintiff,**

v.

**Abraham RIBICOFF, Secretary of Health, Education, and Welfare, Defendant.**

**No. 1084.**

United States District Court
S. D. West Virginia,
at Huntington.

July 6, 1962.

Norman E. Rood, Robinson, Ellis & Rood, Huntington, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action under 42 U.S.C.A. § 405(g) of the Social Security Act to review a final decision of the Secretary of Health, Education and Welfare. That decision was that plaintiff ceased to be entitled to a period of disability under 42 U.S.C.A. § 416(i) and to disability insurance benefits under 42 U.S.C.A. § 423, and the jurisdiction of

this court is limited to a determination of whether that decision was based on substantial evidence. 42 U.S.C.A. § 405 (g). The court is precluded from having a hearing de novo. See Carpenter v. Flemming, D.C.N.D.W.Va., 178 F.Supp. 791.

For continued entitlement to a period of disability and to disability insurance benefits, plaintiff must meet the requirements of the Act. A discussion of the elements of the statutory disability is contained in Pruitt v. Flemming, D.C. S.D.W.Va., 182 F.Supp. 159. There is no dispute here concerning plaintiff's "insured status" under the Act. Under 42 U.S.C.A. § 425, the Secretary may suspend benefits paid under 42 U.S.C.A. § 423 on the basis of information that an individual may have ceased to be under a disability until it is determined, under 42 U.S.C.A. § 421, whether the disability has in fact ceased.

Plaintiff filed applications to establish a period of disability and for disability insurance benefits sometime in the 1950's. The hearing examiner's decision states that plaintiff's application to establish disability was filed on June 14, 1958. The government's brief states that the application to establish disability was filed on June 14, 1957. The court has examined the record and finds that the application to establish disability was filed neither in 1957, nor on June 14, 1958, but on June 12, 1958. The hearing examiner's decision states that plaintiff's application for disability insurance benefits was filed on April 2, 1958. The government's brief agrees that this was the date on which this application was filed. The court has again examined the record and finds that plaintiff's application for disability insurance benefits was filed on March 6, 1958.

In his application for a period of disability, plaintiff stated that he was born on July 1, 1896, and that he became impaired because of hospitalization for pulmonary tuberculosis on August 30, 1957. Plaintiff was granted a period of disability beginning August 30, 1957, and disability insurance benefits beginning March, 1958. Subsequently, the Bureau of Old-Age and Survivors Insurance made a determination that plaintiff had ceased to be under a disability and terminated his insurance benefits. Following administrative affirmation of this determination, plaintiff requested and received a hearing. The hearing examiner considered the case de novo and found, on May 11, 1961, that plaintiff had ceased to be disabled in December 1959. The Appeals Council declined to review the hearing examiner's decision on July 7, 1961, and that decision thus became the "final decision" of the Secretary, subject to the present judicial review.

From the evidence in the record, there is no doubt as to the existence of plaintiff's lung condition. There is also no doubt that the tuberculosis is inactive. The question at issue here is whether plaintiff's inactive advanced tuberculosis has disabled him from doing any substantial gainful activity. And this question must be resolved in light of undisputed evidence that plaintiff had in fact been doing substantial gainful activity since August, 1959.

Plaintiff was discharged from the Veterans Administration Hospital at Brecksville, Ohio, in June, 1959. In August of 1959 he returned to his trade as a barber on a part time basis. In August he earned $25.00 a week and by May of 1960 he had increased his earnings to $40.00 a week. It was this activity that prompted a determination that his disability had ceased. Plaintiff has consistently maintained that he returned to work to test his own capacity and stamina, and that he has been weakened by the work activity but forced to continue working, even on the part time basis, because of medical expenses incident to the hospitalization of his wife on two occasions. It is a fair conclusion that the termination of his disability insurance benefits did nothing to lighten his financial burden either.

Recognizing that the part time barbering activity of plaintiff was a substantial gainful activity under the Act, the hearing examiner's decision reflects the next

step in the evidentiary process relative to a determination of disability notwithstanding the activity:

"The hearing examiner pointed up to the claimant that in view of the irrefutable fact that he was, and had been for over a year, engaged in a substantial gainful activity, that medical evidence that his sputum was positive, *or medical evidence from qualified medical men that the work activity he was actually engaged in was medically contraindicated,* is needed to establish his claim that he was too ill or weak to engage in the substantial gainful activity he was actually engaged in, and the hearing examiner told the claimant he would hold up issuing a decision for a receipt of any such evidence." (Emphasis supplied.)

The hearing examiner did delay his decision and additional exhibits were provided by plaintiff before the record was closed and a decision rendered. One of these exhibits was a report, dated April 20, 1961, from Dr. C. P. S. Ford. This report, based on a physical examination and X-ray findings of Dr. Cole D. Genge, stated that plaintiff should be considered as "totally disabled."

The hearing examiner did not feel that this medical opinion was sufficient proof of disability as required by the preceding quote from his decision:

"It is highly significant that the claimant at and after the hearing indicated that he was desirous of presenting medical evidence that the work he is doing as a barber is injurious to his health, but that in lieu thereof he merely obtained an 'opinion' from a doctor \* \* \* that he is 'totally disabled.' The undersigned hearing examiner realizes, of course, that a seriously severe pulmonary insufficiency may follow even from inactive tuberculosis, but such a medical fact must be established by appropriate medical tests and findings therefrom, such as an exercise tolerance test whereby the shortness of breath may be measured to determine, in fact, medically, whether or not there is a severe shortness of breath on mild exertion."

The hearing examiner followed with this conclusion:

"Although the claimant in this case claims that he has a serious shortness of breath and weakness due to the effect of his tuberculosis episodes and other impairments, it cannot be ignored that the claimant for a period much longer than a year has nonetheless been part-time employed, in spite of his impairments, as a barber earning around $30 to $40 a week from this activity, so that the only finding that can be made under the blunt facts of this case is that the claimant has been, and is now engaged in a substantial gainful activity, and the hearing examiner accordingly so finds, *and there being no medical evidence that his activity is dangerous or harmful to the claimant's health,* there is no alternative but to find that the claimant ceased to be 'disabled' as defined in and intended and required by the Act in December 1959." (Emphasis supplied.)

The hearing examiner, in his decision, and the government, in its brief, have either overlooked or chosen to ignore an essential piece of evidence which is exactly what is required in a case of this sort to show disability. When plaintiff was discharged from the Veterans Hospital in June of 1959, the recommendations of that institution were:

"RECOMMENDATIONS: This patient requested his discharge. It is the consensus of the conference that he may be discharged home with approval. *However he should not engage in work such as food handling or any other work which entails close contact with other people, because of the fear of his possible relapse and infection of other persons.* He may do part time light work." (Emphasis supplied.)

This report is "medical evidence from qualified medical men" that plaintiff's work activity as a barber (which certainly requires close contact with other people) was "medically contraindicated".

Contrary to the government's contentions, the report of Dr. Ford and the subjective testimony of plaintiff as to his weakness and other physical deficiencies since returning to work are clearly in accord with the predictions of the Veterans Hospital discharge report, and are subsequently corroborative thereof.

Here we have a man who was discharged from the hospital with the caveat that he should not engage in any work which entails close contact with other people for two reasons: the fear of his possible relapse, and the fear of infection of other persons. This is simply another way of saying that this barber, who was disabled before because of active tuberculosis, is still disabled, even though the tuberculosis is inactive, because of the possibility of relapse or infection of others if he returns to work. This plaintiff had no business returning to work as a barber in the first place, for his own good and for the good of others, although his motives, as found in the record, are understandable if not exculpating. Having returned to work, the prophesy of the discharging hospital has been borne out as evidenced by the report of Dr. Ford (substantiated by the X-ray report of Dr. Genge) and the testimony of plaintiff himself. This evidence clearly establishes plaintiff's claim that he is too ill or weak to engage in the substantial gainful activity he was actually engaged in, and there is no evidence in the record (and certainly no substantial evidence) upon which the examiner could find otherwise. Plaintiff's age and work history indicate that he could find no other substantial gainful activity, especially when his employment problem would be essentially compounded by the proscriptions of the discharge report.

Plaintiff also claims that he was denied due process by the Administrative Agency, but the court finds no merit in this claim.

It is the decision of this court that plaintiff has carried his burden in showing himself disabled within the meaning of the Act, and is therefore entitled to a period of disability and to disability insurance benefits. It was error for the Bureau to terminate these benefits. The decision of the Secretary is not based on substantial evidence, the motion of the Secretary for summary judgment is denied, the decision of the Secretary is reversed, and the case is remanded to the Secretary with directions that plaintiff be granted a reinstatement of his period of disability and his disability insurance benefits in conformance with this opinion.