**Mose DAMRON, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1108.**

United States District Court
S. D. West Virginia,
at Huntington.
Sept. 6, 1962.

Robert E. Lusk, Welch, W. Va., for plaintiff.

Harry G. Camper, U. S. Atty., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g) to review a final decision of the Secretary of Health, Education, and Welfare.

On January 26, 1960, plaintiff filed an application for a period of disability and/or disability insurance benefits, stating that he first became unable to work on July 10, 1958, due to arthritis, asthma, and heart trouble. His specially insured status will not end until at least September 30, 1963. The final decision of the Secretary from the entire record is that plaintiff as of 1958, or thereafter, until filing of application on January 26, 1960, was not continuously incapable of engaging in a light but substantial gainful activity (in spite of his impairments) and that he is not, therefore, continuously "disabled" as defined in the Social Security Act. This court finds that the record contains substantial evidence to sustain such finding, and the finding of the Secretary is affirmed. If plaintiff's condition should become worse in the future, as indicated by one doctor, the claimant will remain insured until 1963 and could file a new application.

A thorough discussion and collection of cases concerning the elements of statutory disability are contained in Pruitt v. Flemming, S.D.W.Va., 182 F.Supp. 159, and it is not thought necessary to repeat either the discussion or authorities.

Dr. M. L. White, Jr., examined plaintiff on December 20, 1960, almost a year after he filed his application. The doctor found a barrel chest, rather marked exaggeration of the curve of spine, and emphysematous breath sounds. From x-rays he discerned a rather marked emphysema, and extremely questionable fibrosis with no characteristics of miner's asthma (silicosis). Dr. White could not understand why his pulmonary function studies would prove plaintiff not disabled, but made none of those himself, nor did he test plaintiff's tolerance for exercise. Nevertheless, he concluded that pulmonary disability was present.

Dr. J. E. Johnson's examination of February 1, 1961, was quite similar to that of Dr. White in physical and x-ray findings, except Dr. Johnson saw some characteristics of silicosis in plaintiff's fibrosis, but he, too, failed to employ any pulmonary function or exercise test. He concluded that plaintiff was totally and permanently disabled.

Plaintiff was examined by at least six other doctors and their evidence is quite different. Dr. W. W. Scott and Dr. H. F. Schneider found no evidence of disability. Dr. Rowland Burns, on May 13, 1960, found plaintiff well nourished and in no distress, giving history of many fractures. Plaintiff complained chiefly of leg pain, not localized in the joints, backache, shoulder and chest pain not resembling angina. He volunteered no complaint of breathlessness, and with reference to being exposed to carbon monoxide in 1948, stated that there had been no permanent disability. After a most thorough examination, described in detail in his report, and after evaluating fluoroscopy, electrocardiogram, pulmonary function studies, and laboratory tests, in all of which plaintiff cooperated, Dr. Burns found low-back osteoarthritis causing moderate limitation on bending, no abnormal function in the right leg although it was shortened by old fractures, and mild to moderate breathing dysfunction. He reported that the overall physiological impairment was "moderate." As to the lungs, he reported the fluoroscope had shown mild or minimal conditions of inelasticity and scarring (emphysema and fibrosis). Two specialized breathing tests showed the lung function as equal to 86.2 percent and 73.2 percent of normal.

On May 19, 1961, Dr. E. M. Delabarre attempted further independent ventilation studies. Six attempted studies,

punctuated by a rest period, were attempted, after which the doctor abandoned testing in the face of continued complaints, commenting "coordination poor, effort submaximal * * *. Tracings not considered worth measuring or interpreting * * *." A special orthopedic examination, given by Dr. A. A. Grebe on the same day, showed free painless motion and no abnormalities about the shoulders. Complaints had been made of burning pain radiating from the shoulders to the hands and chest. He found a slightly accentuated dorsal kyphotic curve as insignificant, and reported no sign of acute illness or distress. He classed the complaint as entirely subjective and without objective evidence.

Dr. William C. Revercomb, Jr., completed another special examination on June 14, 1961, to try to find any cardio-respiratory impairments. He is a full-time internist and member of the Cardiac Work Classification Unit of the West Virginia Rehabilitation Center. He, too, was unable to find any heart enlargement and, on taking electrocardiogram both before and after a Master's exercise test, found nothing of any consequence. He found that breath sounds were adequate, and the chest expanded and the diaphragms distended fairly well. There was "no respiratory distress" nor did electrocardiogram show any significant change. He concluded his report by saying:

> "It is the feeling of the Unit that Mr. Damron has no demonstrable heart disease. He has some pulmonary fibrosis and chronic bronchitis, but according to Dr. Burns' pulmonary function studies and his physical examination, this is of moderate severity. He has much tension and seems to be of limited capacity. It is the recommendation of the Unit that Mr. Damron have psychological examinations and possibly a consultation with a psychiatrist."

Plaintiff completed the seventh grade and worked for 43 years as a coal miner. The last six months of his work was as a night watchman, and for about 13 years before that he was an assistant section foreman on night duty. Plaintiff explained that his section foreman job was an easy one in which he relayed orders and performed no labor. In another interview, he stated that his last job as night watchman terminated when the mine had closed.

The most that can be said was that the evidence was conflicting. In fact, it appears that the two doctors favorable to plaintiff relied on plaintiff's complaints rather than objective tests conducted by others. There is ample evidence to support the finding of the Secretary.

Affirmed.