Albert HALL, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education, and Welfare,
Defendant.

Civ. A. No. 1091.

United States District Court
S. D. West Virginia,
at Huntington.

Dec. 4, 1962.

Robert E. Lusk, Williamson, W. Va.,
Clay S. Crouse, Beckley, W. Va., for
plaintiff.

Harry G. Camper, Jr., U. S. Atty.,
Huntington, W. Va., for defendant.

HARRY E. WATKINS, District
Judge.

■ This is an action under 42 U.
S.C. § 405(g) of the Social Security Act
to review a final decision of the Secretary of Health, Education and Welfare.
That decision disallowed plaintiff's claim
for a period of disability under 42 U.S.C.
§ 416(i) and for disability insurance
benefits under 42 U.S.C. § 423, and the
jurisdiction of this court is limited to
a determination of whether that decision was based on substantial evidence.
42 U.S.C. § 405(g). The court is precluded from having a hearing de novo.
See Carpenter v. Flemming, D.C.N.D.
W.Va., 178 F.Supp. 791.

The Act, 42 U.S.C. § 416(i) provides
for eliminating from a person's earning
record the period during which he was
under a "disability" in computing his
average monthly wage upon which the
amount of his benefit is based. A discussion of the elements of this statutory
disability is contained in Pruitt v. Flemming, S.D.W.Va., 182 F.Supp. 159.
There is no dispute here concerning
plaintiff's "insured status" under the
Act, and it suffices to say that plaintiff
met the requirements of this "insured
status" through September 30, 1957.

On July 12, 1960, plaintiff filed an application for a period of disability and/or
disability insurance benefits, alleging
that he first became unable to work in
November of 1953 because of arthritis
and chest trouble (coughing). (Plaintiff
had previously filed an application to
establish a period of disability on May
31, 1956; however, after his administrative remedies had been exhausted, plaintiff did not seek judicial review of the
Secretary's decision.) Following unfavorable administrative determinations,
plaintiff requested and received a hearing by a hearing examiner. The hearing
examiner took evidence and, on July 20,
1961, rendered a decision denying plaintiff's claim. On September 25, 1961, the
Appeals Council declined plaintiff's request for review of the hearing examiner's decision. That decision thus became the final decision of the Secretary.

The issue in this case is whether there is substantial evidence in the record to support the Secretary's decision that plaintiff, having the burden of proof, did not show himself to be unable to engage in any substantial gainful activity as a direct result of a medically determinable physical impairment which was expected either to result in death or to be of long-continued and indefinite duration.

In his application of July 12, 1960, the plaintiff indicated that he was born on July 22, 1910, and that he had completed the fourth grade. In an earlier application, May 1956, he noted that he had completed the sixth grade.

At the hearing before the hearing examiner plaintiff testified that he was engaged in farming until 1941 or 1942; that he thereafter worked in the mines principally as a member of a track recovery crew (removing track); that he injured his hip and back in a mine accident in March, 1949; that in approximately September, 1950, he returned to the mines where he performed "light work" consisting of removing track bolts from rails which were to be carried off; that he considered this to be light work because he did not have to load the rails onto a car; that he continued doing this work until November, 1953, when he was "cut off" because of a general reduction in work forces at the mine; that he has never worked since this time; that he was recalled by his former employer in February, 1956, but could not pass the physical examination required for a *full duty* employee (that is, not doing exclusively the light work that he had performed between 1950 and 1953); and that at the time of his physical examination in 1956 he felt that he was still capable of performing his last job, the "light work" explained above. Plaintiff's wage record compiled for Social Security purposes reveals that he was credited with the maximum taxable earnings of $3600 in 1951 and 1953 and for $3412 in 1952, whereas in no other year is he shown to have earned as much as $3000. Plaintiff also testified that he had lost more time from work because of illness prior to 1949, the date of the mine accident, than thereafter.

A medical report from the Holden Hospital, dated July 25, 1960, reveals that prior to 1949 plaintiff had been treated for various minor complaints, such as colds and boils, without having been admitted to the hospital. The hospitalization following the 1949 mine accident was noted. The diagnosis of the injuries was fracture of the ischium and acetabulum, left (fracture of the lowermost segment of the left hip bone and of the cup-shaped segment above it which receives the head of the thigh bone).

In a subsequent report from the Holden Hospital, dated September 26, 1960, it was stated that plaintiff was given a work slip on January 17, 1950, and that he was treated as an out-patient on June 25, 1951, for an upper respiratory infection and was given a work slip on July 5, 1951.

In three reports prepared in 1949 for workmen's compensation purposes Dr. Chillag noted the accident and the injuries described above, that the fracture was healing without complication, that the plaintiff was disabled because of pain in the hip and leg, that traumatic arthritis was present, and that this disability could continue for approximately three months. The Compensation Commission granted the plaintiff a twenty per cent permanent partial disability carrying payments for eighty weeks.

In July, 1954, plaintiff was examined for public assistance purposes by Dr. Zando who reported that plaintiff's general appearance and gait were poor but that his senses, heart, and blood pressure were normal. He also found proliferative arthritis of the fifth lumbar and first sacral vertebrae and degenerative arthritic changes in the left hip joint. He recommended no treatment and answered "no" to a question concerning the ability of the applicant to work full time at some occupation.

On August 19, 1958, Dr. Grebe performed a special orthopedic examination at the request of the Bureau of Old-Age

and Survivors Insurance. Plaintiff complained of pain in the left hip and pelvis. On examination Dr. Grebe found no abnormal curvatures and no tender points on palpation and a moderate degree of diffuse spasm in the lumbar region. With knees extended the plaintiff could touch the floor with his fingertips, and lateral movements were also considered to be well within normal limits. He could not hyperextend (bend backward) beyond neutral. Reflexes and sensation in the lower extremities were normal; there was no atrophy on discrepancy in leg length; and the sciatic tension test was negative. Straight leg raising on the right could be performed to 90 degrees with no discomfort, and on the left it could be performed to 70 degrees beyond which point the plaintiff complained of left hip pain. Spinal X-rays revealed spur formation on a number of vertebrae, and there was some bridging between the third and fourth lumbar vertebrae, but the vertebral spaces were fairly well maintained. There was no fracture or subluxation (dislocation). Dr. Grebe concluded that there were moderately advanced changes of the lumbosacral spine. X-rays of the pelvis and hip joints showed a normal sacroiliac joint on the right. The left sacroiliac joint disclosed some indication of sclerosis and fusion, and the left ilium (wide upper portion of the hip bone) showed a deformity on the basis of old trauma. This old trauma was also evident in the right pelvis bone and ischium. These fractures had well healed. There was osseous proliferation in the cup of the left hip joint, but the hip joint space was maintained. Hypertrophic changes were also in evidence on the ischium and acetabulum. Dr. Grebe's diagnostic impressions were degenerative arthritis, advanced, lumbar spine; and severe arthritis, left hip joint, probably due to trauma. His opinion was that the plaintiff was markedly handicapped and physically disabled "for any more than very sedentary type of work." He recommended that the plaintiff's claim for social security be favorably considered.

Plaintiff testified that he did nothing even around the house. At times he could not get one leg over the other. It hurt him to walk at any time, and on occasions he could not walk at all. He takes no medication.

Plaintiff's claim for disability rests essentially on an arthritic condition stemming from a mine accident which occurred on March 3, 1949. There is no question that this accident occurred and that plaintiff suffered certain fractures which have been discussed. There also can be no denial that the objective medical evidence of record establishes that the plaintiff suffers from arthritis. The question here is whether the evidence is sufficient to show that the arthritis has progressed to a stage which has prevented the plaintiff from engaging in any substantial gainful employment taking into consideration his work experience, education, and training.

It should first be observed that after the accident in 1949 and the presence of traumatic arthritis was discovered, plaintiff returned to the mines and performed "light work" from 1950 through 1953. During this period he earned more money per year than he had ever earned before. Also, it is significant that he did not stop working for medical reasons. He was simply the unfortunate victim of a general reduction of work forces at the mine. He also admits that he could have continued doing the work that he had been doing. This court is not unmindful of plaintiff's testimony that he was unable to pass a physical examination for general, full duty work at the mines at a later date. But this does not preclude the finding that he could even then have performed the "light work" that he had been doing at the time of the "cut off." In fact, plaintiff admitted in his testimony before the hearing examiner that he could have done so at that time, 1956.

Of particular importance in this case are the objective clinical findings of Dr. Grebe when he examined the plaintiff on August 19, 1958. In that examination Dr. Grebe found that the plaintiff was,

724

in essence, able to touch the floor with his fingertips while his knees were extended and that he could move laterally well within normal limits. Without repeating all of Dr. Grebe's findings again, suffice it to say that the only movement restrictions were that the plaintiff could not bend backward beyond a neutral position and that he could not lift his left leg above 70 degrees without experiencing pain. Clearly, then, it is reasonable to conclude that the undeniable presence of arthritis had not then incapacitated the plaintiff to such an extent that he could not engage in any substantial employment or activity.

It is probable that plaintiff will not be able to perform any work that will involve heavy lifting. But the evidence is not such that it can be said that he would not be able to perform "light work" either at a mine or at some other place of business which is commensurate with his limited education and training, and work experience.

Certainly the 1954 opinion of Dr. Zando that the plaintiff was unable to work is not conclusive on the ultimate fact in issue although it may be considered as evidence (Underwood v. Ribicoff, 4 Cir., 1962, 298 F.2d 850). The same is true of the opinion of Dr. Grebe. It should, however, be noted that Dr. Grebe in 1958 did not find that the plaintiff was unable to do any work. He was of the opinion that the plaintiff could do very sedentary work.

The Secretary found that plaintiff failed to establish that he had an impairment, or a combination of impairments on or at any time prior to September 30, 1957, the date on which he last met the earnings requirement under existing legislation, so severe as to have rendered him incapable of engaging in any substantial gainful activity within the meaning of the law. Therefore plaintiff was not entitled to have a period of disability established for him, and he is likewise not entitled to disability insurance benefits under the provisions of the Social Security Act, as amended.

There being substantial evidence of record to support the Secretary's decision, that decision can not be disturbed. Plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.